KING v. CONCORDIA FIRE-INSURANCE CO.

1. Fire Insurance—Policy—Rider—Validity.

Where a rider attached to a fire-insurance policy contains the only description of the property insured to be found in the policy, so that if omitted the policy would be incomplete, the contention that an "iron-safe clause," printed on the rider, is not a part of the policy, cannot be maintained.

2. Same—Iron-Safe Clause—Consideration—Validity.

It cannot be said that an "iron-safe clause," one of the mutual promises and warranties in a fire-insurance policy, is invalid for want of consideration, or because it is not competent for the parties to contract for the preservation of testimony.

3. Same—Knowledge of Agent—Waiver.

A clause in a fire-insurance policy, by which assured agrees to "keep his books and inventory in an iron safe at night, or at some place secure against fire in another building" is not waived by knowledge of the soliciting agent that assured had no iron safe; nor is it waived as to keeping the books in another building by the fact that no other building safer from fire than assured's was accessible, since assured was under no obligation to keep them in a building safer than his own.[1]

_____

[1] For conditions in fire policy as to keeping, producing, and preserving books and papers, see note to *Connecticut Fire-Ins. Co.* v. *Jeary* (Neb.), 51 L. R. A. 698.

4. SAME—IRON-SAFE CLAUSE—CONSTRUCTION.

An iron-safe clause in a fire-insurance policy construed, and *held,* that failure to observe any one of its stipulations invalidated the policy, notwithstanding the statute (§ 5180, 2 Comp. Laws) providing against forfeitures for breach of conditions not injuring the insurer.

5. CONSTITUTIONAL LAW — STANDARD POLICY — DELEGATION OF POWER—INSURANCE COMMISSION.

The Michigan standard policy law of 1881 (Act No. 149), providing for an insurance commission and authorizing it to prescribe a standard form for fire-insurance policies, is unconstitutional because attempting to delegate legislative powers in violation of section 1 of article 4 of the Constitution.

6. SAME—ADDED CLAUSES—VALIDITY.

The Michigan standard policy law of 1881 (Act No. 149), being unconstitutional, an otherwise valid stipulation in a policy which purports to comply with the statute is binding though prohibited by that statute.

Error to Benzie; Chittenden, J.   Submitted February 16, 1905.   (Docket No. 169.)   Decided May 22, 1905.

Assumpsit by Wallace E. King against the Concordia Fire-Insurance Company on a policy of insurance.   There was judgment for plaintiff, and defendant brings error. Reversed.

*Dickinson, Stevenson, Cullen, Warren & Butzel* (*Earl F. Drake,* of counsel), for appellant.

*D. G. F. Warner,* for appellee.

*John E. Bird,* Attorney General (*Michael P. Bourke,* of counsel), amicus curiæ.

CARPENTER, J.   Defendant insured plaintiff's stock of general merchandise against loss by fire.   A fire occurred, and the merchandise was destroyed.   This suit was brought to recover on the policy.   Plaintiff had judgment in the court below.   Defendant appeals to this court.

The most important of plaintiff's books of account and the inventory of his goods (which were kept in a wooden

desk in the store containing his merchandise) were also destroyed by the fire above mentioned. Defendant insists that it was entitled to a judgment because these books and inventory were not kept in "an iron safe at night, or in some place secure against fire in another building," and because plaintiff did not comply with defendant's demand to produce them for inspection as required by the terms of its policy. As the destruction of the books and inventory rendered it impossible for plaintiff to comply with defendant's demand to produce them for inspection, the only question which merits consideration is this: Was the policy void because said books and inventory were not kept in an iron safe at night, or at some place secure against fire in another building? The determination of this question depends upon the validity and proper construction of the following rider attached to said insurance policy (which was a Michigan standard policy):

"Country Store Buildings and Stocks Therein.
"$———. Nothing on one one-story frame building, with shingle roof and its additions adjoining and communicating, including foundations, occupied by W. E. King as a grocery store and situated beginning at a point 14 rods E. of ¼ Post between Sec. 946, thence to S. 10 rods, thence E. 6 rods, then N. 10 rods, thence W. 6 rods to place of beginning, T. 25 N. 13 W. Village of Wallin, Benzie Co., Mich.; $50 on store furniture and fixtures, including iron sate; $350 on his stock of merchandise, consisting principally of groceries and provisions, and such other goods as are usually kept for sale in a grocery store, all while contained in the building and its additions above described.

"It is agreed and understood that the assured shall keep a set of books showing the record of his or their business, including purchases and sales, both for cash and credit; also, that they shall take an inventory at least once a year, and shall keep said books and a copy of their last inventory in an iron safe at night, or in some place secure against fire, in another building, otherwise this policy shall be void."

The question in this case is simply this: Did the failure of the insured to "keep said books and a copy of their

last inventory in an iron safe at night, or in some place secure against fire in another building," make said policy void? This depends upon the validity and effect of that part of the foregoing rider called the "iron-safe clause." The following propositions are affirmed by defendant and denied by plaintiff: (1) That the "iron-safe rider" is a valid and binding part of the contract of insurance. (2) That according to the proper construction of said rider the failure of the insured to keep his books and inventory in an iron safe at night, or in some place secure against fire in another building, rendered the policy of insurance void. We will consider each of these propositions.

1. Was the iron-safe rider a valid and binding part of the contract of insurance?

(*a*) Plaintiff relies upon *Goddard* v. *Insurance Co.*, 67 Tex. 69, as an authority for the proposition that the "iron-safe clause" was not a part of the contract of insurance, because it was contained in a rider attached to the policy, and not in the policy itself. This case is not like *Goddard* v. *Insurance Co.* It is more like the case of *Home Insurance Co.* v. *Cary*, 10 Tex. Civ. App. 300. This can best be shown by quoting from the opinion in the latter case:

"It will be seen that if the attached slip were omitted there would be no description of the property insured, and the policy would be incomplete. That it constitutes a portion of the contract, and is a warranty, we entertain no doubt. There is no rule of law which would warrant the court in adopting that portion of the attached sheet containing the description of the property as constituting a part of the policy, and in rejecting the remainder. * * * The case differs in almost every essential particular from that of *Goddard* v. *Insurance Co.*, 67 Tex. 69. In that case the iron-safe provision did not in terms provide that it should constitute a warranty, was not referred to in the policy, nor did it refer to the policy. It was pasted on the policy in the midst of a sentence which had no reference to the stipulations of the assured, in such connection as to destroy the sense of the sentence; and, what is more important than all these circumstances, the policy was complete without the attached paper. * * *"

(*b*) Plaintiff insists that the iron-safe clause is not supported by any consideration, and cites to support his position *Phœnix Insurance Co.* v. *Angel*, 18 Ky. L. Rep. 1034. In this case the supreme court of Kentucky decided that an iron-safe rider attached to an insurance policy would not be enforced, saying :

"It is without consideration. * * * It does not seem to us that it is competent to contract with the assured for the preservation of testimony in behalf of either party."

In the case at bar it cannot be said that the "iron-safe" agreement was without consideration. The contract of insurance is a contract of mutual promises. The promise of the insurer to indemnify the insured is the consideration for the agreement in question, as well as for all other agreements of the insured. Nor can we agree to the proposition that it is not "competent to contract with the assured for the preservation of testimony." On principle and on authority, in order to preserve exact evidence of the extent of the loss, parties may contract that the books of account and inventory of the assured shall be kept in an iron safe. *Liverpool, etc., Ins. Co.* v *Kearney*, 94 Fed. 314; *Home Ins. Co.* v. *Cary*, supra; Ostrander on Fire Insurance (2d Ed.), p. 650; *Morris* v. *Insurance Co.*, 106 Ga. 461.

(*c*) Plaintiff insists that, as defendant's agent knew when he solicited the insurance that the insured did not have an iron safe, and as plaintiff's building was as safe from fire as any other building in the town where the business was carried on, the inference may be drawn that the defendant thereby waived the requirement that the insured should "keep his books and inventory in an iron safe at night, or at some place secure against fire in another building." If it be conceded that by reason of this knowledge of the agent the insurer waived the requirement that the books should be kept in an iron safe, the insured remained bound to keep his books in another building, unless the requirement that he should so keep them was also waived. See

*Crigler* v. *Insurance Co.*, 49 Mo. App. 11.   Plaintiff contends that it was waived because there was no other building in town safer than his own.   It is manifest that this contention assumes that the language under consideration imposed upon plaintiff an obligation to keep his books in a building more secure against fire than the one containing his insured goods.   Is this correct?   What is the proper construction of the words "or in some place secure against fire in another building?"   We must give this clause the same construction that we would had plaintiff attempted to comply with it, for surely its language does not mean one thing when plaintiff endeavors to comply with it and quite a different thing when he refuses to comply with it.   It does not mean one thing when we are considering the obligations of the insurer and quite a different thing when we are considering the obligations of the insured.   When plaintiff was given the option of placing his books "in an iron safe (that is, in an iron safe in the building containing his insured goods) or in some other place secure against fire," it is clear that the parties contemplated that the other place might be less secure against fire than an iron safe.   The clause therefore did not require that the place "in another building" in which the insured should choose to place his books should be secure against all fire that might possibly endanger them.   What fire must such place be secure against?   This is determined by the purpose intended to be accomplished by the clause under consideration.   That purpose is manifest.   It was to insure the preservation of the best evidence of the amount of the loss of the insured in the event of the destruction of the insured goods by fire.   This object would be accomplished if those books were placed in a building not exposed to the hazard of the fire which might endanger the insured goods.   In other words, the insured could comply with this requirement by placing his books in any proper place in such other building.   And there is nothing to indicate that this other building should be safer than the building containing the insured goods.   If this is the correct construction of the

requirement under consideration—and we think it is—the plaintiff could have complied with it, and there is nothing to indicate that he was released from his obligation to comply with it.

(d) The iron-safe rider in question is a condition added to the Michigan standard policy prescribed in accordance with Act No. 149 of the Public Acts of 1881 (see 2 Comp. Laws, §§ 5170–5179), and plaintiff insists that section 6 of said act (section 5175, 2 Comp. Laws) (which prohibits the issuance of a policy "containing any other or different terms or conditions than those expressed in said Michigan standard policy, or containing any word or words that will add to, take from, or vary the contract therein expressed") makes said condition void. Defendant interposes several answers to this contention. We have carefully considered all these answers, and, without stating them, content ourselves with saying that only one of them is, in our judgment, adequate, and that is that the legislation providing for the Michigan standard policy is unconstitutional. In other words, we cannot uphold defendant's contention that the iron-safe rider is a valid part of the contract of insurance without deciding that the legislation providing for the Michigan standard policy is unconstitutional. At this point it should be remembered that the parties to this suit do not agree as to the proper construction of the iron-safe rider. Plaintiff contends that, properly construed, failure to comply with its requirements did not render the policy of insurance void. If plaintiff is right in this contention, it is unnecessary to adjudge the statute unconstitutional. As courts should not adjudge a law unconstitutional "unless a decision upon that very point becomes necessary to the determination of the cause" (Cooley on Constitutional Limitations [6th Ed.], p. 196), the constitutional inquiry should not be undertaken unless plaintiff is wrong in his construction of the iron-safe rider. We proceed, therefore, to a consideration of the question.

2. Did the failure of the insured to "keep his books

and inventory in an iron safe at night, or in some place secure against fire in another building," render his policy of insurance void ?

(*a*) In the case at bar plaintiff did keep books; he did make an inventory; and he insists that his policy is not void merely because he did not preserve his books and inventory as he agreed. In support of this contention he relies upon *Connecticut Fire-Ins. Co.* v. *Jeary,* 60 Neb. 338 (51 L. R. A. 698). In that case the insured agreed to keep books of account, to take an inventory, and to keep both books and inventory in an iron safe at night, and it was stipulated that "failure to observe the above conditions shall work a forfeiture of all claims under this policy." The insured did keep books of account as agreed. He did not, however, preserve them, and they were lost in the fire which destroyed his insured goods. It was held that under the language of this policy there was no forfeiture, because the insured did not fail to observe all the conditions. The court reasoned as follows:

"It will be noted that these provisions, constituting, as we have seen, a promissory warranty, are joined together by the conjunction 'and,' followed by the penalty of forfeiture, to the effect that 'failure to observe the above conditions shall work a forfeiture of all claims under this policy.' The insurance company had the power to separate the conditions imposed, making each independent of the other, the clause being of its own creation; but it has not chosen to do so. By its own language it has made a series of acts to be construed together, and a failure to perform not one, but all, the conditions is required to work a forfeiture of the policy."

We cannot so construe the iron-safe rider in the case at bar. Here it was, agreed that "the assured shall keep books showing the record of his * * * business, * * * shall take an inventory, * * * and shall keep said books and a copy of their last inventory in an iron safe at night, or in some place secure against fire in another building; otherwise this policy shall be void." This language is clear, and entirely free from ambiguity. We cannot

construe the language "otherwise this policy, shall be void" as the supreme court of Nebraska construed "failure to observe the above conditions shall work a forfeiture of all claims under this policy." We cannot say, as did that court, "it has made a series of acts to be construed together, and a failure to perform not one, but all, the conditions is required to work a forfeiture of the policy." On the contrary, we are compelled to say that the insured has stipulated that if he fails to perform his agreement his policy shall be void, and that by failing to preserve his books as he agreed he failed to perform his agreement.

(b) Plaintiff insists that his failure to preserve the books and inventory as agreed (not being a breach of any condition of the policy which injured the insurer) did not avoid the policy according to section 5180, 2 Comp. Laws. In other words, plaintiff contends that according to the section just cited a breach of a condition does not make an insurance policy void unless the insurer is injured by such breach. This contention is answered by our decision in *Boyer* v. *Insurance Co.*, 124 Mich. 455. We quote from the opinion in that case:

"The loss occurred during a breach of the contract, and while its terms were being violated. The statute does not provide that under such circumstances the policy shall be valid."

On this branch of the case we conclude, therefore, that a failure to comply with the iron-safe rider (assuming it to be a valid part of the contract of insurance) rendered the policy void.

This conclusion compels us to recur to the question of the constitutionality of the legislation providing for the Michigan standard policy. That legislation empowered a commission thereby created to draft a form of fire-insurance policy to be known as the "Michigan Standard Policy," to file a printed copy of such form in the office of the commissioner of insurance (who is a member of said commission); such form to "be so worded and printed as to se-

cure as far as practicable the accomplishment of the following results, viz. :

"*First*. Fairness and equity between the insurers and the assured.

"*Second*. Brevity and simplicity.

"*Third*. The avoidance of technical words and phrases.

"*Fourth*. The avoidance of conditions, the violation of which by the assured would, without being prejudicial to the insurer, render the policy void or voidable at the option of the insurer.

"*Fifth*. The use of as large and fair type as is consistent with a convenient size of paper or parchment.

"*Sixth*. The placing of each separate condition in a separate paragraph, and the numbering of the paragraphs."

It empowered the commission, which was a body having continuous existence, to alter or amend the form so adopted by them "whenever they shall deem it necessary." It gave the commissioner of insurance power to fix the time when the use of the form of policy so adopted or amended "shall become obligatory," and prohibited thereafter, under penalty, the making of contracts of fire insurance, except in accordance with said form as so altered or amended. It is contended that this statute is unconstitutional, because it gave legislative power to the commission. Section 1, art. 4, of our Constitution, provides that "the legislative power is vested in the senate and house of representatives," and it is well settled that such power cannot be delegated. Says Judge Cooley in his Constitutional Limitations (6th Ed.), p. 137:

"One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall

be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust."

Was the power which this statute delegated to the insurance commission legislative in character? It certainly was a power which the legislature itself might rightfully exercise, but it does not follow from this circumstance that it was a legislative power (see *Wayman* v. *Southard*, 10 Wheat [U. S. ] 1), for the legislature often exercises powers of an executive or administrative character which it may delegate (see *Hurst* v. *Warner*, 102 Mich. 238 [26 L. R. A. 484]; *Dowling* v. *Insurance Co.*, 92 Wis. 63 [31 L. R A. 112] ). We have upheld legislation whereby the operation of a law—local option law—in a particular county is made to depend upon the approval of both a majority of the electors and the board of supervisors of said county. See *Feek* v. *Township Board of Bloomingdale*, 82 Mich. 415 (10 L. R. A. 69). The Supreme Court of the United States has held (see *Field* v. *Clark*, 143 U. S. 649) that Congress might vest the President with authority to suspend the operation of a reciprocity law. The proper distinction between such delegated power and legislative power is stated in *Locke's Appeal*, 72 Pa. St. 498, as follows:

" The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

This distinction is approved in *Field* v. *Clark*, supra, and in *Dowling* v. *Insurance Co.*, supra. We have also held (see *Hurst* v. *Warner*, supra) that the legislature may authorize officials (the State board of health) intrusted with the execution of a quarantine law to make rules relative to its execution. See, also, *Chicago, etc.*, *R. Co.* v. *Dey*, 35 Fed. 866 (1 L. R. A. 744); *Georgia Railroad* v. *Smith*, 70 Ga. 694.

" The true distinction [said Ranney, J., in *Cincinnati etc.*, *R. Co.* v. *Com'rs of Clinton Co.*, 1 Ohio St. 88] is

between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

This distinction is also approved in *Field* v. *Clark* and *Dowling* v. *Insurance Co.*, supra. Tested by this distinction, the authority delegated to the insurance commission by the legislation under consideration was not administrative, but was legislative. It cannot be said that the legislature merely delegated to the commission power to determine "a fact or state of things upon which the law makes, or intends to make, its own action to depend;" nor that it merely delegated to the commission "discretion as to its execution to be exercised under and in pursuance of the law." On the contrary, it delegated to the commission authority to itself make the law (which was to be evidenced by the form of insurance policy filed with the commissioner of insurance), and to change this law "whenever they shall deem it necessary." As said by the supreme court of Wisconsin in a similar case:

"Had the commissioner wholly declined to prepare, approve, and adopt any form whatever, it would not have been possible to have carried into effect so imperfect or uncertain an enactment, or to transact business under it. Within the lines indicated, a discretion was reposed in the commissioner as to the form of the policy which embodied the substance of the contract, and which was to have the sanction and force of law. The effect clearly was to transfer to him bodily the legislative power of the State on that subject." *Dowling* v. *Insurance Co.*, 92 Wis., at page 73 (31 L. R. A. 112).

In the following cases similar laws were also adjudged unconstitutional: *O'Neil* v. *Insurance Co.*, 166 Pa. St. 77; *Anderson* v. *Assurance Co.*, 59 Minn. 182 (28 L. R. A. 609); *Phœnix Ins. Co.* v. *Perkins* (S. Dak.), 101 N. W. 1110. We are therefore compelled to declare the law under consideration unconstitutional. That law in form

was never law in effect, and did not prevent the parties to this suit making the iron-safe rider a part of the contract of insurance. That rider was therefore a valid provision of said contract, and, plaintiff having violated its conditions, the policy in suit was void, and defendant was entitled to a verdict and judgment in the lower court.

The judgment for plaintiff should therefore be reversed, with costs, and a new trial granted.

In considering the constitutional question decided in this case, we have labored under an unusual embarrassment. Counsel for plaintiff and counsel for defendant each having argued that the law was unconstitutional, we thought it proper to request a brief from the attorney general. He complied with this request, and furnished a brief—a most helpful brief—in which he, too, maintained that the law was unconstitutional. We have therefore been compelled to decide the case without the advantage of any argument—doubtless because no such valid argument could be discovered—maintaining the constitutionality of the law.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.