# JANUARY TERM, 1923.*

## G. F. REDMOND & CO. v. MICHIGAN SECURITIES COMMISSION.

1. STATUTES — POLICE POWER — DELEGATED POWER MUST BE DEFINITE.

   While the police power, inherent in the State, is incapable of being defined and subjected to limitations in the abstract, its exercise in any given direction, such as the regulation of trades, occupations, and professions, is capable of definite expression, and must, if delegated to a commission or administrative board, define its purpose and the means of attainment thereof, and do this in language leaving no wide administrative discretion, and no discretion at all of a legislative nature.

2. SAME—BLUE SKY LAW—LICENSES—REVOCATION OF LICENSE FOR "GOOD CAUSE."

   The term "good cause" for revocation of a license by the Michigan securities commission, as employed in the "blue sky law" (3 Comp. Laws 1915, § 11955), relates so clearly to the conduct of the licensed business, within the limits fixed by law, as to negative any arbitrary official action, and is so comprehensive of unlawful, irregular, fraudulent, unauthorized, and forbidden business management and transactions conducted as to demand no more particular specification of its meaning and its application.

3. SAME.

   A licensee had no right to have the conduct of its business charted by specifications of forbidden practices involving revocation of the license; the general scope and expressed purpose of the law, together with open and fair dealing, entered the license, and transgression thereof constituted "good cause" for revocation thereof.

On constitutionality and purpose of blue sky laws, see notes in L. R. A. 1917F, 524 and 15 A. L. R. 262.

*Continued from Vol. 221.

4. SAME—"GOOD CAUSE" MUST STAND JUDICIAL TEST.

When the legislature granted judicial review of the action of the commission, by certiorari, it thereby imparted to the meaning of the term "good cause" such cause as would stand judicial test in its application to a given case, and this also negatives all idea of wide discretionary power delegated to the commission.

5. SAME—BLUE SKY LAW—"GOOD CAUSE" SUFFICIENTLY DEFINITE.

The term "good cause" for revocation by the commission of the license of any dealer, as used in the "blue sky law," *held*, sufficiently definite.

6. SAME—CERTIORARI—FINDINGS OF COMMISSION FINAL IF SUPPORTED BY EVIDENCE.

On certiorari to review an order of the Michigan securities commission revoking plaintiff's license under the "blue sky law," the Supreme Court is not the trier of the facts, neither does it weigh the evidence; it only reviews the evidence, and if it supports the findings of the commission, they are final.

7. SAME—EVIDENCE—SUFFICIENCY.

The findings of the commission that there was "good cause" for revoking plaintiff's license, *held*, supported by the proofs.

Certiorari to Michigan Securities Commission. Submitted January 25, 1923. (Docket No. 13.) Decided March 22, 1923.

G. F. Redmond & Company were cited to appear before the Michigan securities commission to show cause why its license to transact business in the State should not be revoked. From an order of revocation, plaintiff brings certiorari. Affirmed.

*Elmer W. Mulford* and *Hedley V. Richardson* (*James O. Murfin,* of counsel), for appellant.

*Andrew B. Dougherty,* Attorney General, and *Ernest C. Smith,* Assistant Attorney General, for appellee.

WIEST, C. J. Plaintiff is a Massachusetts corpora-

tion and, upon its application, was duly licensed under the so-called blue sky law of this State to carry on the business of buying and selling stocks for customers on commission. In this proceeding plaintiff reviews, by certiorari, an order of the Michigan securities commission revoking its license to do business in this State.

March 8, 1922, the commission suspended plaintiff's license, designating reasons therefor, in substance as hereinafter stated, and cited it to appear before the commission on March 16th, and show cause why such suspension should not be made permanent. Hearings were had before the commission and testimony of many witnesses taken. April 20, 1922, the commission found the following charges sustained by the proofs so taken and revoked plaintiff's license:

"1. For failure to deliver stocks in accordance with contract.

"2. For unreasonably delayed deliveries of stocks and securities.

"3. For failure to furnish statements to customers showing the time, place, price and name of person to whom stocks were sold or from whom bought, as required by law.

"4. For misrepresentation of stocks offered to customers.

"5. For fraud practiced upon the public and upon its customers by reason of the basis of compensation between the company and its salesmen."

And:

"In addition to the foregoing facts so established, the commission finds, from the testimony of the defendant, submitted by it in its own behalf, that it has been guilty of negotiations and trading in stock unapproved for negotiation and trading in the State of Michigan."

We are asked to determine under what circumstances a dealer's license may be revoked. As usual

we will confine determination to the case before us. It is contended that:

"Under the law, as it now stands, there appears to be no statutory right to revoke a dealer's license."

The attack here made is against the provision in section 11955, 3 Comp. Laws 1915, authorizing the commission to revoke a license for "good cause" upon notice to the dealer and a hearing .duly had, and the particular point urged is the indefiniteness of the term "good cause," in its relation to the business authorized by law and in which one may engage under license duly obtained.

It is insisted that:

"The Michigan securities commission is an administrative body and only on the ground of fraud can it revoke this license."

The questions so presented will be considered together.    The law requiring license and providing for revocation thereof is an exercise of the police power inherent in the State.

We do not accept the broad contention of the attorney general that:

"Wherever the police power of the State seeks to regulate a trade, occupation or profession, it confers upon the regulatory board or commission wide discretionary powers, sometimes directing the lines along which this discretion shall be exercised, but always leaving open a wide field for the exclusive exercise of the discretion of the board or commission administering the act."

Nor do we have to approve of such a doctrine in affirming the action of the commission.    The ambit of the power of the commission is in a field, meted and bound by the express provisions of the law.    The law under which the commission acted designates with as much particularity as is consistent with public policy and the rights of all concerned, the power vested

in the commission and the reasons for exercising the same. While the police power, inherent in the State, is incapable of being defined and subjected to limitations in the abstract, its exercise in any given direction, such as the regulation of trades, occupations and professions, is capable of definite expression, and must, if delegated to a commission or administrative board, define its purpose and the means of attainment thereof, and do this in language leaving no wide administrative discretion, and no discretion at all of a legislative nature. The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated, but it cannot assume it has been vested with power beyond expressed legislative delegation, and must ever seek its way in the light shed by the legislative mandate. This marks the line between arbitrary officiousness and the exercise of delegated power to carry out a designated policy under the police power. Is the determination of the commission consistent with the policy of the State declared in the law? We think it is. If the law states with certainty the policy intended by way of control over a licensee then the term "good cause" for revocation takes its sense from such policy, to be applied to a transgression thereof, and we do not have the uncertainty in the term, pointed out in the use thereof in a mere contract between private parties, as in *Cummer* v. *Butts*, 40 Mich. 322 (29 Am. Rep. 530), where the term "good cause" in a contract was characterized as wanting in sense, incapable of being reduced to lawful certainty by judicial effort and ineffective on account of its radical uncertainty. The term "good cause" for revocation, as employed in the statute, relates so

clearly to the conduct of the licensed business, within the limits fixed by law, as to negative any arbitrary official action, and is so comprehensive of unlawful, irregular, fraudulent, unauthorized and forbidden business management and transactions conducted as to demand no more particular specification of its meaning and its application.

Must the law map out, for the guidance of the licensee, a code of ethics and post danger signals against inhibited and dishonest practices? The plaintiff had no right to have the conduct of its business charted by specifications of forbidden practices involving revocation of the license. The general scope and expressed purpose of the law, together with open and fair dealing, entered the license and transgression thereof constituted good cause for revocation thereof.

When the legislature granted judicial review of the action of the commission, by certiorari, it thereby imparted to the meaning of the term "good cause" such cause as would stand judicial test in its application to a given case, and this also negatives all idea of wide discretionary power delegated to the commission. Revocation of a license for good cause constitutes no penalization of the business licensed; it strikes down the power of those engaged in the business to employ the license contrary to declared public policy or common honesty.

In *Caldwell* v. *Stock Yards Co.*, 242 U. S. 559 (37 Sup. Ct. 224), it was urged against the South Dakota blue sky law that:

"There is no standard fixed to guide the commission in granting the permit, nor is there any standard prescribed as to the reason for the revocation of the permit."

This was answered by the court, and the law sustained, in the opinions in the so-called blue sky cases, *Caldwell* v. *Stock Yards Co., supra; Hall* v. *Geiger-*

*Jones Co.*, 242 U. S. 539 (37 Sup. Ct. 217, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643) ; *Merrick* v. *Halsey & Co.*, 242 U. S. 568 (37 Sup. Ct. 227).

It was said in *Mutual Film Corporation* v. *Industrial Commission of Ohio*, 236 U. S. 230 (35 Sup. Ct. 387, Ann. Cas. 1916C, 296) :

"Undoubtedly the legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and particularize, they would miss sufficiency both in provision and execution."

Answering the contention there made that the statute left decision to arbitrary judgment, whim and caprice and to the different views which might be entertained, the court further said:

"But the statute by its provisions guards against such variant judgments, and its terms, like other general terms, get precision from the sense and experience of men and become certain and useful guides in reasoning and conduct. The exact specification of the instances of their application would be as impossible as the attempt would be futile."

See, also, *Douglas* v. *Noble*, U. S. Adv. Ops. 1922-23, p. 305.

We are of the opinion that the term "good cause" for revocation of the license, relating, as it does, to the conduct of the business regulated by the policy declared in the statute, is sufficiently definite. This brings us to the question of whether the findings of the commission constitute good cause for revocation of the license and whether such findings are supported by evidence. We are of opinion that the findings justify revocation of the license.

The printed record of 603 pages has been read with

care to determine whether there is support to the findings of the commission. It must be borne in mind that we are not triers of the facts, neither do we weigh the evidence; we do no more than review the evidence and if it supports the findings of the commission we cannot disturb such findings. We have reviewed the evidence and are persuaded that the findings are supported by the proofs. It would be of no benefit to the profession to enter upon a discussion of the evidence and it would unnecessarily prolong this opinion.

The action of the commission is affirmed, with costs to defendant.

Fellows, McDonald, Clark, Bird, Sharpe, Moore, and Steere, JJ., concurred.