CITY OF WARREN v STATE CONSTRUCTION CODE
COMMISSION

1. ADMINISTRATIVE LAW—CONSTITUTIONAL LAW—DELEGATION OF POW-
ERS—LEGISLATURE—CONSTRUCTION CODE COMMISSION—CON-
STRUCTION CODE.

The power to carry out a legislative policy enacted into law under
the police power may be delegated to an administrative board
under quite general language, so long as the exact policy is
clearly made apparent; therefore, the delegation of legislative
power to the State Construction Code Commission to promul-
gate a construction code was a valid delegation of power where
the Legislature set forth numerous, detailed, and explicit guide-
lines for the commission to follow in adopting the code, directed
that the code consist of nationally recognized model building
codes and standards, and specified the standards to be utilized
by the commission in exercising its power to add to, omit from,
amend, or modify the code.

2. ADMINISTRATIVE LAW—STATUTES—INCORPORATION BY REFERENCE—
BUILDING CODES—PRIVATE AGENCIES—DELEGATION OF POWERS
—LEGISLATURE—OBJECTIVE OF ACT.

The incorporation in the state construction code of building codes
promulgated by private agencies is not unconstitutional where
they bear a proper relationship to the legislative act and are
clearly related to the general purposes and objectives of the act.

3. STATUTES—EXISTING LEGISLATION—ADOPTION BY REFERENCE—
BUILDING CODES—CONSTITUTIONAL LAW—DELEGATION OF POW-
ERS—ADMINISTRATIVE LAW.

Legislative adoption by reference of future legislation, rules,
regulations or amendments to existing legislation which are
subsequently enacted, adopted or promulgated by another sov-
ereign entity constitutes an unlawful delegation of legislative
power but the Legislature may incorporate by reference exist-
ing statutes and nationally recognized model building codes;
incorporation of such codes does not constitute an unconstitu-

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 13 Am Jur 2d, Buildings §§ 12–17.

tional delegation of legislative power to the agencies which promulgated them.

Appeal from Macomb, Howard R. Carroll, J. Submitted October 15, 1975, at Lansing. (Docket No. 22033.) Decided January 7, 1976.

Complaint by the City of Warren and the Council of the City of Warren for themselves and the inhabitants and real property owners of the City of Warren against the State Construction Code Commission and the County of Macomb seeking temporary and permanent declaratory and injunctive relief exempting the city from the application of the State Construction Code Act of 1972. Temporary injunction granted for the plaintiffs. Defendants filed an emergency application for leave to appeal, which was granted. Reversed and complaint dismissed.

*Thomas Marrocco* and *Robert J. Lord,* for the City of Warren and the City Council.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James H. White* and *James D. Mueller,* Assistants Attorney General, for the Construction Code Commission.

Before: McGREGOR, P. J., and D. E. HOLBROOK, Jr., and M. J. KELLY, JJ.

M. J. KELLY, J. This is an appeal, by leave granted, from a temporary restraining order exempting the plaintiff city from the application of the State Construction Code Act of 1972, MCLA 125.1501 *et seq.;* MSA 5.2949(1) *et seq.* Specifically the plaintiffs allege that MCLA 125.1504; MSA 5.2949(4) is unconstitutional because it is an unau-

thorized delegation of legislative authority. This section reads as follows:

"Sec. 4. (1) The Commission [State Construction Code Commission] shall prepare and promulgate the state construction code consisting of rules governing the construction, use and occupation of buildings and structures, including land area incidental thereto, the manufacture and installation of building components and equipment, the construction and installation of premanufactured units, the standards and requirements for materials to be used in connection therewith, and other requirements relating to the safety, including safety from fire, and sanitation facilities of such buildings and structures.

"(2) The code shall consist of nationally recognized model building codes, other nationally recognized model codes and standards and such amendments, additions or deletions to such building code or other codes and standards as the commission determines appropriate.

"(3) The code shall be designed to effectuate the general purposes of this act and the following objectives and standards:

"(a) To provide standards and requirements for construction and construction materials consistent with nationally recognized standards and requirements.

"(b) To formulate such standards and requirements, to the extent practicable, in terms of performance objectives, so as to make adequate performance for the use intended the test of acceptability.

"(c) To permit to the fullest extent feasible the use of modern technical methods, devices and improvements, including premanufactured units, consistent with reasonable requirements for the health, safety and welfare of the occupants and users of buildings and structures.

"(d) To eliminate restrictive obsolete, conflicting and unnecessary construction regulations that tend to increase construction costs unnecessarily or restrict the use of new materials, products or methods of construction, or provide preferential treatment to types or classes of materials or products or methods of construction.

"(e) To insure adequate maintenance of buildings and structures throughout this state and to adequately protect the health, safety and welfare of the people.

"(4) The code shall be divided into such sections as the commission deems appropriate including without limitation, building, plumbing and electrical sections. The boards shall participate in and work with the staff of the commission in the preparation of parts relating to their functions. However, the commission has final responsibility for the contents of the code. The present minimum standards promulgated by the state plumbing board under section 2 of Act No. 266 of the Public Acts of 1929, as amended, being section 338.902 of the Compiled Laws of 1948 and by the state electrical administrative board under Act No. 217 of the Public Acts of 1956, as amended, being sections 338.881 to 338.892 of the Compiled Laws of 1948, and the 1971 edition of the national electric code for safety to life and property shall be reviewed and considered by the commission for inclusion as the substance of the initial plumbing and electrical sections.

"(5) The code may incorporate the provisions of any code, standard or other material by reference thereto. Periodically the commission shall add, amend and rescind rules to update the code.

"(6) The commission shall promulgate the first code not later than 12 months after this act takes effect."

Pursuant to the responsibility imposed by this section, the State Construction Code Commission undertook a study of the major nationally recognized model building codes. Eventually the commission proposed, for the state building code, those rules governing the construction, alteration, relocation, demolition, use and occupancy of buildings contained in the Basic Building Code, 1970 edition, including a cumulative supplement dated 1973, together with numerous exceptions, amendments and additions. The Basic Building Code is the product of the Building Officials & Code Administrators International, Inc., which is a private asso-

ciation of building officials and code enforcement officials from throughout Canada and the United States. The Basic Building Code is a nationally recognized model building code.

The basic building code section of the State Construction Code was promulgated on May 6, 1974. The effective date of the code is November 6, 1974.

On October 18, 1974, plaintiff city filed a complaint in Macomb County Circuit Court seeking "temporary and permanent declaratory and injunctive relief" against the defendant commission and the County of Macomb. On October 24, 1974, a restraining order was issued by the circuit judge, temporarily exempting the plaintiffs from the application of the above-cited statute. The defendant State Construction Code Commission then filed an emergency application for leave to appeal in this Court on October 31, 1974.

On the following day, November 1, 1974, plaintiff city filed an amended complaint, adding another count and again requesting injunctive relief. The basis for the additional count was § 64 of the Administrative Procedures Act of 1972, MCLA 24.264; MSA 3.560(164), which provides for a declaratory judgment in circuit court when a state commission refuses to issue a ruling on the validity of its rules, the rules in question being the building code.

The State Construction Code Commission then filed a motion for immediate consideration and an application for emergency stay of proceedings in this Court on November 4, 1974. On November 24, 1974, the lower court entered a second temporary restraining order based on count two of plaintiff's amended complaint.

This Court on November 27, 1974, entered its

order granting the motions for immediate consideration and the emergency application for leave to appeal and further ordered that the motion for stay of the temporary restraining order and of further proceedings in the Macomb Circuit Court relating to this cause be granted.

Parenthetically it should be noted that Macomb County is not directly involved in this appeal, having pleaded no contest to the amended complaint on November 4, 1974.

In issuing the temporary restraining orders, the circuit court based its action on the alleged unconstitutionality of the State Construction Code Act as an unlawful delegation of legislative power. Thus two questions of law are framed for our consideration: 1) whether the delegation of legislative power to the State Construction Code Commission (hereinafter Commission) to promulgate a State Construction Code (hereinafter code) was invalid and unconstitutional, and 2) whether the code promulgated by the Commission is an invalid and unconstitutional delegation of legislative power because a part of a private nationally recognized model building code was incorporated by reference therein.

I

In making a preliminary determination that the State Construction Code Act makes an unlawful delegation of legislative power to the Commission, the circuit judge relied on *King v Concordia Fire Insurance Co,* 140 Mich 258, 268–269; 103 NW 616 (1905), wherein the Supreme Court held that the Legislature cannot delegate its power to make a law, but it can delegate power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Observ-

ing that the power to promulgate substantive rules is essentially the power to make law, the circuit judge held that, pursuant to *King v Concordia Fire Insurance Co, supra,* the State Construction Code Act, which purports to delegate to the Commission the power to establish substantive construction standards, is an unconstitutional delegation of legislative power.

However, *King v Concordia Fire Insurance Co, supra,* and its progeny, are distinguishable from the case at bar. In *King,* the statute under consideration directed the Insurance Commission to adopt a standard form of fire insurance policy, which would then become obligatory for all insurance companies operating within the state. The following standards were set forth in the act to guide the Insurance Commission in adopting a standard policy:

"*First.* Fairness and equity between the insurers and the assured.

"*Second.* Brevity and simplicity.

"*Third.* The avoidance of technical words and phrases.

"*Fourth.* The avoidance of conditions, the violation of which by the assured would, without being prejudicial to the insurer, render the policy void or voidable at the option of the insurer.

"*Fifth.* The use of as large and fair type as is consistent with a convenient size of paper or parchment.

"*Sixth.* The placing of each separate condition in a separate paragraph, and the numbering of the paragraphs." *King, supra,* 140 Mich at 267.

It should be noted that the standards relate mostly to the form of the policy, rather than its substance, and that the only directions given to the Insurance Commission were so general as to confer upon the commission almost arbitrary powers.

In contrast, the State Construction Code Act sets forth numerous, detailed, and explicit guidelines for the Commission to follow in adopting the code. See MCLA 125.1504(1) through (5); MSA 5.2949(4)(1) through (5), MCLA 125.1505(3) through (7); MSA 5.2949(5)(3) through (7), MCLA 125.1508(5), (6); MSA 5.2949(8)(5), (6), MCLA 125.1509(3); MSA 5.2949(9)(3), MCLA 125.1513; MSA 5.2949(13), MCLA 125.1515; MSA 5.2949(15), MCLA 125.1521; MSA 5.2949(21).

The State Construction Code Act also directs that the promulgated code consist of nationally recognized model building codes and other nationally recognized model codes and standards, together with such amendments, additions or deletions as the Commission determines appropriate. MCLA 125.1504(2); MSA 5.2949(4)(2). The act also specifies the standards to be utilized by the Commission in exercising its power to amend, modify, add or omit. MCLA 125.1504(3), (5); MSA 5.2949(4)(3), (5).

The case at bar is thus within the rule announced in *G F Redmond & Co v Michigan Securities Commission,* 222 Mich 1, 5; 192 NW 688 (1923), which was followed in *Wyandotte Savings Bank v Banking Commissioner,* 347 Mich 33, 46–47; 78 NW2d 612 (1956), and *Hazel Park Racing Association, Inc v Racing Commissioner,* 343 Mich 1; 71 NW2d 692 (1955). In *G F Redmond & Co v Michigan Securities Commission, supra,* 222 Mich at 5, the court held:

"The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated, but it cannot assume it

has been vested with power beyond expressed legislative delegative mandate. This marks the line between arbitrary officiousness and the exercise of delegated power to carry out a designated policy under the police power."

See also *People v Babcock,* 343 Mich 671, 679–680; 73 NW2d 521 (1955), *Milk Marketing Board v Johnson,* 295 Mich 644, 651–652; 295 NW 346 (1940), and cases cited therein.

Not only is *King v Concordia Fire Insurance Co, supra,* distinguishable from the case at bar, but it is a questionable authority in light of constitutional law developments in the administrative law area since the 1930's. See, *e.g., Sunshine Anthracite Coal Co v Adkins,* 310 US 381, 398; 60 S Ct 907, 915; 84 L Ed 1263 (1940), where the Court held:

"The standards which Congress has provided here far exceed in specificity others which have been sustained. Certainly in the hands of experts the criteria which Congress has supplied are wholly adequate for carrying out the general policy and purpose of the Act. To require more would be to insist on a degree of exactitude which not only lacks legal necessity but which does not comport with the requirements of the administrative process. Delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility. *Currin v Wallace,* 306 US 1, 15 [59 S Ct 379, 386; 83 L Ed 441 (1939)] and cases cited. But the effectiveness of both the legislative and administrative processes would become endangered if Congress were under the constitutional compulsion of filling in the details beyond the liberal prescription here. Then the burdens of minutiae would be apt to clog the administration of the law and deprive the agency of that flexibility and dispatch which are its salient virtues. For these reasons we hold that the standards with which Congress has supplied the Commission are plainly valid." [Citation omitted.]

As Professor Davis notes in his Administrative Law Treatise, Vol 1, § 2.01, p 76 (1958 Ed), in only two cases in American history have congressional delegations to administrative agencies been held invalid, both in 1935.

We therefore hold that the delegation of legislative power to the State Construction Code Commission to promulgate a state construction code was valid.

## II

Having determined that the State Construction Code Act is not unconstitutional on its face, the question remains whether the code is unconstitutional as incorporating building codes promulgated by private agencies. In making this determination, this Court has the limited function of examining the rules to determine whether they bear a proper relationship to the legislative act. *Sterling Secret Service, Inc v Department of State Police,* 20 Mich App 502, 514; 174 NW2d 298 (1969). A reading of the rules adopted indicates that such rules are clearly related to the general purposes and objectives of the act set forth at MCLA 125.1504(3); MSA 5.2949(4)(3).

However, it is plaintiffs' contention that, by adopting code provisions promulgated by private entities, the Commission unconstitutionally delegated legislative power to those private entities.

It is well established that the Legislature may, in enacting legislation, incorporate by reference existing statutes. *Pleasant Ridge v Governor,* 382 Mich 225; 169 NW2d 625 (1969), *Dearborn Independent, Inc v Dearborn,* 331 Mich 447; 49 NW2d 370 (1951). But an attempt by the Legislature to adopt by reference future legislation, rules, regula-

tions or amendments to existing legislation, which are subsequently enacted, adopted or promulgated by another sovereign entity does constitute an unlawful delegation of legislative power. *People v Urban,* 45 Mich App 255; 206 NW2d 511 (1973).

In the case at bar, the State Construction Code Act specifically refers to such codes as were adopted by reference by the Commission. None of the codes referred to or adopted by the Commission were promulgated later than the effective date of the act, and moreover such rules were specifically approved by the joint legislative committee pursuant to the Administrative Procedures Act of 1969, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.*

The Basic Building Code, as promulgated by the Building Officials & Code Administrators International, Inc., is not legislation, and therefore does not, strictly speaking, come within the authority of *Pleasant Ridge v Governor, supra,* or *Dearborn Independent, Inc v Dearborn, supra.* However, we see no reason why a nationally recognized model building code should be treated differently from a statute in this regard.

This is not a case wherein the Legislature merely incorporated by reference a given document. In this case, the Commission, pursuant to the direction of the State Construction Code Act, selected, modified, amended, added to and omitted from the referenced building code. Having provided for the adoption of a building code to be tailored to the needs of the citizens of this state, the act cannot be said to have created an unconstitutional delegation of legislative power. The law enacted by the Legislature contains detailed standards which were implemented by the administrative agency charged with carrying out the man-

date of the act. There has been no unconstitutional delegation of legislative power.

We therefore order the temporary restraining orders vacated and the complaint dismissed. No costs, a public question being involved.