662 P.2d 131

Dominic SCAPPATICCI and Rose Scappa-
ticci, husband and wife; and William P.
Kelly, Jr., and Mary Lou Kelly, husband
and wife, on behalf of themselves and
all others similarly situated, Plaintiffs-
Appellees,

v.

SOUTHWEST SAVINGS AND LOAN AS-
SOCIATION, an Arizona corporation,
and Catalina Savings and Loan Associa-
tion, an Arizona corporation, Defend-
ants-Appellants.

No. 16266.

Supreme Court of Arizona,
En Banc.

March 10, 1983.

Rehearing Withdrawn April 11, 1983.

Daughton, Feinstein & Wilson by Allen
L. Feinstein and Jeffrey S. Leonard, Phoe-
nix, for plaintiffs-appellees.

Fennemore, Craig, von Ammon & Udall
by Philip E. von Ammon, Drew M. Brown,

Rosemary J. Shockman, Phoenix, for defendants-appellants.

HAYS, Justice.

This is an appeal from a partial summary judgment of the Superior Court. The order of the trial court contained rule 54(b) language. 16 A.R.S.Rules of Civil Procedure, rule 54(b). We have jurisdiction of the appeal pursuant to A.R.S. § 12–2101(B) and 17A A.R.S.Rules of Civil Appellate Procedure, rule 19(e).

The plaintiffs/appellees, Scappaticci and Kelly, are representatives in a class action filed against defendants/appellants, Southwest Savings and Loan Association and Catalina Savings and Loan Association, both Arizona chartered associations.[1] Appellees and other members of the class are the owners of residences subject to mortgages or deeds of trust executed to secure the repayment of loans made by appellants.[2] Each of the mortgages or deeds of trust contains a provision known as a "due-on-sale" clause which states that if the borrower transfers the subject property without the consent of the lender, the lender may accelerate the outstanding balance of the loan. Beginning in 1981, appellants adopted a policy to enforce their rights under the due-on-sale clauses and demand immediate payment of the balance of the loan unless the purchaser of the subject property assumed the loan and agreed to an increase in the interest rate to one-half the difference between the existing rate and the current market rate for new loans, with a maximum rate of 14 percent.

The appellees filed a motion for partial summary judgment on the grounds that appellants' due-on-sale policy constituted an unreasonable restraint on alienation, violated public policy and was impermissible under A.R.S. § 33–806.01. The trial court granted the motion and entered a partial summary judgment enjoining Southwest and Catalina from pursuing their due-on-sale policies:

"The due on sale policy of defendants, Southwest Savings and Loan Association and Catalina Savings and Loan Association, whereby upon the sale of his home by a member of the class, defendants will demand and enforce immediate payment of the entire balance of the loan, without regard to the responsibility of the purchaser, unless an interest rate increase in excess of the limits prescribed by Arizona Revised Statutes section 33–806.01 is agreed to or paid, constitutes an unreasonable restraint upon alienation, is void as against public policy, is in violation of Arizona Revised Statutes section 33–806.-01, and is unenforceable, and defendants, Southwest Savings and Loan Association and Catalina Savings and Loan Association, are enjoined from implementing that due on sale policy."

It is from this judgment that Southwest and Catalina Savings and Loan Associations have appealed.

Appellants recognize that Arizona case law supports the trial court's ruling, but urge us to reconsider our prior holdings in light of the danger to the financial integrity of the savings and loan associations should they not be allowed to enforce due-on-sale clauses.[3] Although both parties and

1. The two associations have subsequently merged.

2. The following persons were certified as members of the class:
   "Homeowners within the state of Arizona whose homes are subject to a deed of trust or mortgage of which defendant, Southwest Savings and Loan Association, or defendant, Catalina Savings and Loan Association, is the beneficiary or mortgagee and which deed of trust or mortgage contains a provision granting to the beneficiary or mortgagee the right to declare the entire principal balance of the loan secured by the deed of trust or mortgage immediately

due and payable upon transfer of the subject property by the owner thereof ('due on sale clause')."

3. Appellants argue that a due-on-sale clause is an express term in the contract between the lender and the borrower, that the clause is necessary to keep the savings and loan associations' loan portfolios current with rising market interest rates, and that the value of the mortgage in the secondary mortgage market significantly decreases if the due-on-sale clause is unenforceable. Appellants argue this further

458

amicus curiae have thoroughly briefed the issue, a recent act of Congress obviates the necessity to decide whether the savings and loan associations' enforcement policy is in fact a restraint upon alienation. This act, the Garn-St. Germain Depository Institutions Act of 1982 (hereinafter "Garn Act"),[4] preempts state restrictions on the enforcement of due-on-sale clauses.

Federal preemption of state restrictions has occurred in two steps. *Fidelity Federal Savings and Loan Association v. De la Cuesta,* —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), handed down in June of that year, held that a federal regulation[5] permitting federally chartered savings and loan associations to exercise due-on-sale clauses in mortgages bars application of contrary state doctrine. The Garn Act, passed in October, 1982, contains a section designed to place the disadvantaged state-chartered lenders on a more competitive footing with the federally chartered lenders and to eliminate the uncertainty regarding the enforceability of due-on-sale clauses.[6]

Title III, Part C, Sec. 341 of the Garn Act provides for federal preemption of state laws and judicial decisions which restrict the enforcement of due-on-sale clauses with respect to real property loans. The lender's right to enforce the clause is to be governed by the terms of the loan contract and the lender is encouraged to permit assumption of the loan at a blended interest rate (a rate between the contract rate and market rates). The bill enumerates nine exceptions to the lender's option to enforce the due-on-sale clause which are designed to protect consumers.

In order to protect homebuyers who relied on state due-on-sale restrictions and reasonably believed they had assumable loans, subsection (c) of the Act creates a "window period" exception for loans made or assumed after state action restricted the enforcement of due-on-sale clauses. This "window period" begins "on the date a State adopted a constitutional provision or statute prohibiting the exercise of due-on-sale clauses, or the date on which the highest court of such State has rendered a decision (or if the highest court has not so decided, the date on which the next highest appellate court has rendered a decision resulting in a final judgment if such decision applies State-wide) prohibiting such exercise" and ends on the date of enactment of the legislation, October 15, 1982. Loans originated by federal savings and loan associations and federal savings banks are exempt from the window-period exception. Window period loans are subject to state law for three years (until October 15, 1985), after which time the provisions of Section 341 will apply. However, during those three years, the state legislature may act to otherwise regulate loans originated by state-chartered lenders.

What we must decide here is whether Arizona qualifies as a window period state and, if so, what act or judicial decision triggers the beginning date of the period. The Senate and Conference Reports accompanying the Garn Act indicate that the members of Congress contemplated that state laws or judicial decisions which *restrict* the exercise of due-on-sale clauses will suffice to qualify the state as a window period state:

"Most commonly, statutes or judicial decisions prohibit the exercise of due-on-sale clauses by limiting their enforcement to instances where the lender's security interest in the property collateralizing the loan will be impaired, or where the person assuming the loan fails to meet cus-

hurts Arizona's economy because Arizona borrowers are significant beneficiaries of the secondary mortgage market.

4. Public Law 97–320, 96 Stat. 1469.

5. 12 C.F.R. § 545.8–3(f) (1982).

6. S.Rep. No. 97–536, 97th Cong. 2d Sess. 21, *reprinted in* 1982 U.S.Code Cong. & Ad.News

3054, 3075. (The House bill was passed in lieu of the Senate bill after amending its language to contain much of the text of the Senate bill. The House accepted the Senate provision on federal preemption with two additional amendments. S.Conf.R. No. 97–641, 97th Cong. 2nd Sess. 85, 89, *reprinted in* 1982 U.S.Code Cong. & Ad.News 3128, 3132.)

tomary credit standards. Other statutory restrictions prohibit the full exercise of due-on-sale clauses by limiting the fee lenders can charge for transfer of a loan, or by restricting or disallowing interest rate changes during the life of the mortgage, or upon assumption of the mortgage loan." [7]

The evolution of state restrictions on the enforcement of due-on-sale clauses in Arizona begins with *Baker v. Leight*, 91 Ariz. 112, 370 P.2d 268 (1962), wherein the court held that an agreement to sell is a conveyance within the meaning of an acceleration clause. In *Baker*, we expressly declined to determine whether the right to enforce such a clause was in all events enforceable.

On July 8, 1971, in *Baltimore Life Insurance Company v. Harn*, 15 Ariz.App. 78, 486 P.2d 190, *petition for review denied*, 108 Ariz. 192, 494 P.2d 1322 (March 29, 1972), the Court of Appeals held that Baltimore Life, the mortgagee of property belonging to Harn, could not accelerate payment of the loan absent a showing that Baltimore Life's security in the property was threatened. The Harns had agreed to sell their property to a third party. Baltimore Life asserted that they were therefore entitled by their contract to acceleration and foreclosure. The court held that the parties may enter such agreements as they deem necessary and that acceleration clauses are bargained-for elements of mortgages designed to protect the mortgagee's security in the property and from other unanticipated risks. But where the acceleration clause restricts the mortgagor's ability to dispose of his property, it is a restraint against alienation. "It follows that the invocation of the [acceleration] clause must be based on grounds that are reasonable on their face." 15 Ariz.App. at 81, 486 P.2d at 193. Thus, *Harn* operated to restrict the enforcement of due-on-sale clauses to the situation where the lender's security interest was threatened and to other "reasonable" situations.

Shortly after the *Harn* decision was rendered, the Arizona Legislature enacted the Arizona Deeds of Trust Act, A.R.S. § 33–801 et seq., effective August 13, 1971. Section 33–806.01, which applies only to property of two and one-half acres or less not used for commercial purposes and limited to dwelling units not to exceed four single-family units, limits the charge a beneficiary or trustee of a deed of trust may make to a trustor who transfers his interest in the trust property. Subsection C provides that the beneficiary or trustee shall not increase the interest rate upon a transfer unless the transferor is released from liability and further provides that the amount of increase in interest shall not exceed one-half of one percent per annum.

In *Patton v. First Federal Sav. & Loan Ass'n*, 118 Ariz. 473, 578 P.2d 152 (1978), we relied on both *Harn* and A.R.S. § 33–806.01 in holding that the enforcement of a due-on-sale clause by the beneficiary was an unlawful restraint on alienation. The clause in *Patton* permitted the beneficiary to demand immediate payment of the balance of the loan if the property was conveyed without the beneficiary's consent. Although the clause was in a deed of trust instrument, we said that "[m]ortgages and Deeds of Trust are significantly analogous that we may look to mortgage law for guidance in this case." 118 Ariz. at 477, 578 P.2d at 156. We compared the clause in the deed of trust to the clause in the *Harn* mortgage and held that "the 'due-on-sale' clause cannot be enforced unless First Federal can show that its security is jeopardized by the transfer of the subject property without First Federal's consent; enforcement of the clause without such a showing is an unlawful restraint on alienation, prohibited by A.R.S. § 33–806.01(A) ..." 118 Ariz. at 479, 578 P.2d at 158.

Thus, it is clear, as we recognized in *Patton*, that since 1971 in *Harn*, mortgage law in Arizona has placed restrictions on the enforcement of due-on-sale clauses.[8]

---

**7.** S.Rep. No. 97–536, *supra* n. 6 at 23, 3077.

**8.** *Patton* also recognizes that A.R.S. § 33–806.01 restricts the enforcement of due-on-sale clauses in deeds of trust instruments.

These restrictions are substantial enough to cause borrowers to believe they had assumable loans and sufficient, we believe, to qualify Arizona as a "window period" state, the beginning of which is triggered by *Harn.*

Appellants urge us to adopt the position that Arizona is not a window period state, contending that state savings and loan associations have always had the right to enforce and use due-on-sale clauses to increase the interest rate on loans at the time the property is transferred. Appellants base this argument on A.R.S. § 6–402(B) which grants state savings and loan associations the same rights, privileges and powers as federal savings and loan associations "doing business in this state unless prohibited by this chapter." It is appellants' contention that federal savings and loan associations had the right to enforce due-on-sale clauses in 1960 when A.R.S. § 6–402(B) was enacted and thus, state savings and loan associations now have that right by virtue of the statute.

First, we note that federal savings and loan associations historically have *not* had the right to enforce due-on-sale clauses in Arizona. *Patton v. First Federal Sav. & Loan Ass'n, supra.* Appellants, however, urge us to reexamine our holding in *Patton,* insisting that the *Patton* court ignored the Arizona Legislature's intent to give Arizona savings and loan associations the existing federal right to exercise due-on-sale clauses.

Appellants cite a federal regulation promulgated in 1948, 12 C.F.R. § 545.8–3(a), as authority for their proposition that federal savings and loans had the power to enforce due-on-sale clauses before 1960. This regulation requires all loan instruments to "provide for full protection to the Federal association".

■ While some courts may well have interpreted this regulation as preemptive of state restrictions on the enforcement of due-on-sale clauses, these cases are not per-

suasive.[9] Congress itself has not expressly mandated federal preemption of due-on-sale regulation, nor do we find implied congressional preemptive intent based upon the above vague language which makes no reference to due-on-sale clauses. The United States Supreme Court in *De La Cuesta, supra,* based its finding of federal preemption on a 1976 regulation of the Federal Home Loan Bank Board. In a footnote, the Court recognized appellants' argument that the 1976 regulation merely codified pre-existing law but refrained from considering it.[10] Absent clear and persuasive authority to the contrary, we do not find that federal preemption of state restrictions on the enforceability of due-on-sale clauses existed in Arizona in 1960. The Arizona Legislature can incorporate by reference only such laws and regulations as exist at the time they enact legislation and cannot constitutionally adopt future changes which might occur. *City of Warren v. State Const. Code Comm'n,* 66 Mich.App. 493, 239 N.W.2d 640, 644 (1976). Arizona Revised Statutes § 6–402(B) did not give state savings and loan associations the future right to enforce due-on-sale clauses.

Congress, in the Garn Act, has provided a method for the gradual preemption of state law regarding due-on-sale clauses designed to honor the reasonable expectations of homeowners with existing mortgages and deeds of trust containing such clauses. In Arizona, homeowners have reasonably believed the due-on-sale clause is unenforceable. Rather than frustrate those expectations by reversing our holding in *Patton,* we prefer to operate according to those procedures set forth in section 341 of the Garn Act.

Appellants have also suggested that because *Patton* is a decision by the "the highest court" of our state, it alone can trigger the window period. Such a reading of the Garn Act is unduly narrow and subverts the purpose of the window period exception. *Patton* followed the prevailing law as set

---

9. *See Bailey v. First Fed. Sav. & Loan Ass'n,* 467 F.Supp. 1139, 1141 (C.D.Ill.1979).

10. *Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta, supra,* —— U.S. at ——, 102 S.Ct. at 3031, 73 L.Ed.2d at 686, n. 24.

out in *Harn* and the deed of trust statute. To cut off contracts made prior to *Patton* but after *Harn* would render a great injustice to those borrowers who reasonably believed the due-on-sale clauses were not enforceable under *Harn.*

 A decision by the Arizona Court of Appeals has statewide application. Arizona Revised Statutes § 12–120 provides that the Court of Appeals shall constitute a single court with two divisions. Absent a decision by the Arizona Supreme Court compelling a contrary result, a decision by one division of the Court of Appeals is persuasive with the other division.

> "[T]he principle of stare decisis and the need for stability in the law in order to have an efficient and effective functioning of our judicial machinery dictate that we consider decisions of coordinate courts as highly persuasive and binding, unless we are convinced that the prior decisions are based upon clearly erroneous principles, or conditions have changed so as to render these prior decisions inapplicable."

*Castillo v. Industrial Comm'n,* 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974).

We hold that the beginning of the window period is triggered by *Baltimore Life Insurance Company v. Harn, supra.* This result is consonant with the enunciated purpose of Congress in creating the window period exception. "A blanket federal preemption of state restrictions on the enforcement of due-on-sale clauses would, however, have an unfair impact on those homebuyers who, despite the contractual terms of their mortgage contracts, relied on state due-on-sale restrictions and reasonably believed they had assumable loans." [11] Accordingly, the window period begins on July 8, 1971.

The injunction issued by the Superior Court is limited to those loans made, assumed or transferred during the window period and remains in effect until October 15, 1985, unless the state legislature acts otherwise to regulate such loans.

Judgment affirmed as modified.

11. S.Rep. No. 97–536, *supra* n. 6 at 22, 3076.

HOLOHAN, C.J., GORDON, V.C.J., and WILLIAM E. EUBANK and SARAH D. GRANT, Court of Appeals Judges, concur.

*Note:* Justices JAMES DUKE CAMERON and STANLEY G. FELDMAN did not participate in the determination of this matter. Judges WILLIAM E. EUBANK and SARAH D. GRANT, of the Court of Appeals, Division One, were called to sit in their stead.