578 P.2d 152

Valerie PATTON and John Philip Patton, Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHOENIX, a corporation, First Service Corporation, a corporation, Phil Kable, M. L. Rubin and G. E. Fink, Appellees.

No. 13558.

Supreme Court of Arizona, En Banc.

March 13, 1978.

Rehearing Denied April 18, 1978.

Thur & Preston by Calvin C. Thur, Scottsdale, for appellants.

Jennings, Strouss & Salmon by Roxana C. Bacon, Phoenix, for appellees.

HAYS, Justice.

Appellants appeal from the trial court's granting of a summary judgment motion. The Supreme Court has jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e).

Many allegations and claims for relief were presented to the trial court. Rather than attempting to meet the seven issues raised by the appellants in rather broad and ambiguous terms, we have refined those issues into four, as follows:

1. Was appellees' conduct an intentional infliction of emotional distress?

2. Did appellee, First Service Corporation, breach its fiduciary duties as trustee under the deed of trust?

3. Is the "due on sale" clause in the deed of trust an unlawful restraint on alienation?

4. Did appellee First Federal convert the funds in Mrs. Patton's $2,000 savings account?

Viewing, as we must, the record in the light most favorable to the party opposing the summary judgment, *Hall v. Motorists Insurance Corp.*, 109 Ariz. 334, 509 P.2d 604 (1973), the following facts are established. In December, 1972, plaintiff/appellant Valerie Patton (then Valerie Faulkner) applied for a loan from First Federal Savings and Loan Association (First Federal). Mrs. Patton was told by an employee of First Federal that First Federal would not give her a loan unless she pledged a $2,000 savings account to First Federal for two years. At the end of two years, if Mrs. Patton had not defaulted on the loan, the pledge was to terminate. Mrs. Patton pledged the savings account as required. First Federal lent her a sum necessary to purchase a home for herself and her children and required her to sign a Trust Deed naming First Federal as beneficiary.

About 18 months later, Mrs. Patton entered into an agreement of sale with a Mr. Toy. The agreement stated that the First Federal loan was to remain Mrs. Patton's obligation and that she would pay off this loan before Toy had made the last payment due under the agreement. The property would not be deeded to Toy until he had paid the entire balance due under the agreement. Shortly after this transaction with Toy, First Federal informed Mrs. Patton that unless First Federal received a transfer fee of $181.33 and a ½% interest rate increase on the loan, First Federal would force Mrs. Patton to pay off the entire balance of the loan under the "due on sale" provision of the Trust Deed. In September, 1974, First Federal instructed First Service Corporation, the trustee of the Trust Deed, to issue a Notice of Trustee's Sale on Mrs. Patton's property even though Mrs. Patton had never been in default on the loan until First Federal refused to accept payments. Mrs. Patton put the refus-

ed payments in an escrow account available to First Federal. The Notice of Trustee's Sale which Mrs. Patton received and which was recorded in the Maricopa County real estate records indicated that the sale was to be held January 3, 1974 (about nine months *before* Mrs. Patton received the notice). The Notice of Trustee's Sale posted on the property stated that the sale would be January 3, 1975. First Service Corporation never sent Mrs. Patton a notice with the correct sales date as required by the statutes. A.R.S. § 33–801 et seq.

At the end of the two-year pledge period, First Federal refused to return Mrs. Patton's savings account to her. First Federal eventually did pay Mrs. Patton the interest on the account, but only after several delays and disagreements.

Just a few days before the scheduled trustee's sale, Mrs. Patton filed a lawsuit from which this appeal arose. Mrs. Patton's husband was later joined in the suit as an indispensable party. The trial court granted summary judgment for the defendants, and plaintiffs/appellants appealed the summary judgment.

## 1. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Appellants claim that appellees' conduct during the original loan transaction and in the course of events leading up to the scheduled trustee's sale constituted the intentional infliction of emotional distress. While some of appellees' behavior may have been harsh and may have upset Mrs. Patton, it is still within the realm of acceptable business practice. We do not find appellees' acts outrageous enough to justify submitting to the jury the question of intentional infliction of emotional distress. It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief. *Cluff v. Farmers Insurance Exchange,* 10 Ariz.App. 560, 460 P.2d 666 (1969). One may recover for intentional infliction of emotional distress only where the defendant's acts are "so outrageous in character

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff, supra,* 10 Ariz.App. at 562, 460 P.2d at 668. Since we do not believe that appellees' acts would be viewed as this unacceptable in our community, we hold that the trial court's granting of summary judgment on the intentional infliction of emotional distress claim was proper. *See also* Restatement (Second) *Torts* § 46 and Comments (1965).

## 2. THE CLAIM FOR BREACH OF THE TRUSTEE'S FIDUCIARY DUTIES

Appellants argue that First Service Corporation breached its fiduciary duties as trustees under the Deed of Trust by failing to give Mrs. Patton the proper notice of the trustee's sale. The evidence indicates that First Service Corporation did not mail Mrs. Patton a Notice of Trustee's Sale with the correct date of sale as required by A.R.S. §§ 33–808, 809, and the Corporation did not give Mrs. Patton the additional notice of breach required by A.R.S. § 33–809(C).

The Deed of Trust statutes (A.R.S. § 33–801 et seq.) specify the notice which must be given prior to a trustee's sale. If a sale is held without complying with the statutory notice requirements, such a sale would be void, for the statutes set forth the only procedure for a valid trustee's sale. However, appellees state in their brief that the trustee's sale was never held. Since the subject property has not been sold, it would appear that appellants have not been damaged by the trustee's breach of fiduciary duties. The Deed of Trust statutes neither state nor imply that appellants could obtain any relief other than a voiding of the sale and possibly an award of damages resulting from the void sale, and appellants have offered no authority to support a claim for damages when the Deed of Trust statutes have been violated but the trustee's sale was not held. Therefore, we hold that the trial judge acted properly in ordering summary judgment for defendants on the breach of fiduciary duties issue.

### 3. IS THE "DUE ON SALE" CLAUSE AN UNLAWFUL RESTRAINT ON ALIENATION?

Appellants urge that the following clause in the Deed of Trust constitutes an unlawful restraint on alienation:

"4. CONSENT TO TRANSFER: In the event that Trustor, or any successor in interest of Trustor, shall sell, convey, transfer, contract to sell, lease for more than five (5) years or lease with option to purchase the secured property, or any part thereof, or any interest therein, or if any of said parties shall be divested of any part thereof or interest therein, either voluntarily or involuntarily, or if title to said property is further encumbered or subjected to any lien or charge, contractual, statutory, by operation of law or otherwise, or if any of said parties shall change or permit the character or use of said property to be changed, or to allow digging for gas, oil, or other minerals, or if any of said parties are a partnership and the interest of a general partner or if a corporation and more than 25% of the corporate stock is sold, transferred, or assigned in any one calendar year, without the written consent of Beneficiary, all indebtedness secured by this Deed of Trust, irrespective of the maturity date of said indebtedness, and without regard to the adequacy or inadequacy of the security, or solvency or insolvency of Trustor, shall, at the option of the Beneficiary, become immediately due and payable without demand or notice. Beneficiary shall have the contractual right to withhold its consent to a transfer under the provisions of this paragraph in any instance where the security upon reevaluation, the financial responsibility of the purchaser, or the physical condition of the premises does not warrant that consent, or the existing interest rate of this loan is less than the current interest rate being charged on loans to purchasers of properties similar in value to the secured property." ·

Compared to mortgage requirements, the Deed of Trust procedures authorized by statute make it far easier for lenders to forfeit the borrower's interest in the real estate securing a loan, and also abrogate the right of redemption after sale guaranteed under a mortgage foreclosure. See A.R.S. § 33–726 and A.R.S. § 12–1281 et seq. A mortgage generally may be foreclosed only by filing a civil action while, under a Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of court with no necessity of judicial action. The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower.

Mortgages and Deeds of Trust are sufficiently analogous that we may look to mortgage law for guidance in this case. "Due on sale" clauses in mortgages are a means of protecting against a conveyance of the mortgaged property which would impair the mortgagee's security. *Baltimore Life Insurance Co. v. Harn,* 15 Ariz.App. 78, 486 P.2d 190 (1971). In *Harn, supra,* the court held that a "due on sale" clause in a mortgage would not be enforced unless the mortgagee alleged that his security was jeopardized by conveyance of the property to someone other than the original mortgagor.

The clause in the *Harn* mortgage permitted the mortgagee to declare the entire mortgage balance immediately due and payable upon any conveyance of the mortgaged property. While the clause in this case permits the beneficiary of the Deed of Trust to demand immediate payment of the balance of the loan only when the subject property is conveyed without the beneficiary's consent, the clause in this case still effects a very harsh restraint on alienation. First Federal has not shown that its security is in any way jeopardized by Mrs. Patton's conveyance of the property to Toy; yet, First Federal is attempting to use this clause to prevent Mrs. Patton from conveying her property unless the interest rate on the loan is increased ½% and First Federal

is paid a 1% transfer fee. In fact, the record strongly suggests that First Federal will withhold its consent to the property transfer until these amounts are paid regardless of the transferee's financial strength and reputation for responsibility.*

■ Mrs. Patton has not asked to be released from liability on the loan to First Federal; therefore, First Federal's attempt to raise the interest on the loan is impermissible under A.R.S. § 33–806.01(C) which provides:

"C. When a trustor transfers his interest in the trust property, no beneficiary or trustee shall increase the interest rate on the obligation secured by such trust deed unless the transferring trustor is released from all liability thereon and in no event shall the amount of such increase exceed one-half of one percent per annum more than the interest rate paid by the transferring trustor."

Under the agreement of sale, Mrs. Patton accepted a small down payment for her property and she remained liable on the loan to First Federal. Mrs. Patton looks to her right to forfeit Toy's interest in the property as security if Toy should default in his obligations to her under the agreement. Therefore, although Toy is in possession of the property, Mrs. Patton has a considerable interest in seeing that the property is maintained and insured. Mrs. Patton also has a strong interest in making sure that the monthly payments on the First Federal

loan are made, for in the event of a default on this loan, First Federal may require a trustee's sale of the very property which is her security for the obligation of Toy. Toy also has a strong interest in maintaining the property, insuring it, and making the payments to Mrs. Patton, for he resides on the property, and he will lose his interest in the property if he defaults in his agreement to Mrs. Patton. Mrs. Patton has instructed the title company which collects Toy's payments to make the payments on the First Federal loan. Under these circumstances, we cannot assume that the mere transfer to Toy without the consent of First Federal impairs First Federal's security at all. Indeed, First Federal may be in a more secure position as a result of the transfer. There are now two persons motivated to protect the property and to make payments on the First Federal loan; before the transfer, First Federal could look only to Mrs. Patton to take care of the property and repay the loan.

■ The facts before us are very similar to the facts in *Tucker v. Lassen Savings & Loan Association,* 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974). The effect of the "due on sale" clause in this case and in *Tucker* are exactly the same; both clauses make it very difficult for a person to convey property subject to a Deed of Trust regardless of whether the contemplated transfer lessens the lender's security. Therefore, we follow the reasoning of the *Tucker* court and hold that the

---

* On August 20, 1974, First Federal sent Mrs. Patton the following letter:

Dear Valerie:

Notwithstanding the objections raised by your recent letter, this is to advise you that First Federal considers you to be in violation of your agreement to obtain our consent upon resale of your property. The fact that you choose to sell by contract or by deed does not alter the change of ownership at which the Consent to Transfer provision of our Note and Deed of Trust aim.

Therefore, and I wish to make myself very clearly understood, First Federal intends either to have the interest rate on this loan increased ½ of 1% and to collect a 1% transfer fee, or to force you to pay off your loan. I do not make this as an idle statement, nor do I make it without knowing I have the legal

right to impose the two conditions I have mentioned and, as a result, I will offer you until August 26, 1974 within which to comply with this letter. Otherwise, this is your formal notice that First Federal intends to invoke the provisions of its Consent to Transfer provision as contained in the Deed of Trust which you executed on December 18, 1972, which said document was recorded on December 22, 1972 in Docket 9899, at page 117 thereof. If this demand is not met, First Federal will immediately proceed to file a Notice of Default and to sell your property. If you have any questions, either as to First Federal's right or intention to do so, please let me know.

Very truly yours,

/s/ M. I. Rubin

"due on sale" clause cannot be enforced unless First Federal can show that its security is jeopardized by the transfer of the subject property without First Federal's consent; enforcement of the clause without such showing is an unlawful restraint on alienation, prohibited by A.R.S. § 33–806.-01(A), which provides:

"A. Nothing in this article shall be construed to prevent or limit the right of a trustor to transfer his interest in the trust property, or authorize a beneficiary or trustee to arbitrarily withhold his consent to a transfer by the trustor of his interest in the trust property."

Thus, granting summary judgment for defendants on the restraint on alienation issue was improper.

A lender does have the right to protect itself by requesting assurance that a responsible person is in possession of property which is security for a loan and that the obligor on the loan is a person whose financial history justifies the lender's extending credit. *See Harn, supra.* Therefore, First Federal may require that Toy provide information which will enable First Federal to determine whether the Patton-Toy agreement will jeopardize First Federal's security. First Federal may refuse to consent to the transfer to Toy if First Federal reasonably concludes that this transfer will impair its security, but First Federal may not arbitrarily withhold its consent, nor may First Federal exact an interest rate increase as a condition for giving its consent. *See* A.R.S. § 33–806.01.

The record suggests that First Federal may have waived its right to obtain information from Toy. It appears that First Federal initially sent Mrs. Patton a letter asking that she have Toy come to one of their offices to "qualify" for the transfer of the property. Mrs. Patton did not comply with this request, but Mr. Patton attempted to persuade First Federal to consider some kind of compromise solution. First Federal was not willing to compromise, but instead informed Mrs. Patton that unless First Federal received the transfer fee and the interest rate increase, the entire loan balance would be declared due. First Federal then proceeded to prepare for the trustee's sale of Mrs. Patton's property. This sequence of events implies that First Federal has elected the remedies of accelerating the loan and holding a trustee's sale. By this action, First Federal may have waived its right to require information from Toy, or First Federal may be estopped from asserting its right to such information. Upon remand, the trial court should determine whether First Federal has lost its right to demand that Toy "qualify" before consenting to the transfer.

## 4. THE CONVERSION ISSUE

Appellants contend that First Federal converted Mrs. Patton's $2,000 savings account when First Federal refused to return the account to Mrs. Patton at the end of the two-year pledge period. Appellees state that they cannot be liable for conversion because they obtained the savings account lawfully under the pledge agreement and they retained the account lawfully because they are entitled to retain the account upon the breach of the loan contract. Appellees view Mrs. Patton's entering the agreement of sale without their consent as a breach of the loan contract. As we have previously explained, the contract would be breached only if Mrs. Patton's acts threatened First Federal's security.

Unlawfully withholding property from a person entitled to the possession of the property is a kind of conversion. *Judkins v. Sadler-MacNeil,* 61 Wash.2d 1, 376 P.2d 837 (1962); Prosser on Torts, § 15 (4th ed. 1971). A good-faith belief that one had the right to retain the property is no defense to conversion. *Judkins, supra.* Therefore, unless appellees can prove that the Toy-Patton agreement jeopardized their security, Mrs. Patton is not in breach of the loan contract, and appellees are liable in conversion for unlawfully refusing to return the savings account to her. The trial court erred in granting summary judgment for the defendants on the conversion issue.

Remanded to the trial court for proceedings consistent with this opinion.

STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.

*Note*: JAMES DUKE CAMERON, Chief Justice, did not participate in the determination of this matter.