692 P.2d 1038

**Stephen H.E. PHILLIPS and Margaret Phillips, husband and wife, Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA, and the Honorable Jack T. Arnold, a Judge thereof; Respondents,**

**and**

**Anthony VAN MARLE and Sondra L. Van Marle, husband and wife, Real Parties in Interest.**

**No. 2 CA–SA 0139.**

Court of Appeals of Arizona, Division 2.

Nov. 15, 1984.

190

Corey & Farrell, P.C. by Patrick J. Farrell, Tucson, for petitioners.

Richard L. Parrish, Tucson, for real parties in interest.

## OPINION

HOWARD, Judge.

The issue presented by this special action concerns the enforceability of a due-on-sale clause in a deed of trust executed in connection with the sale of a residence located on land in excess of two and one-half acres. The petition was taken from the trial court's denial of petitioners' motion for summary judgment on the ground that the clause in question was enforceable. We assume jurisdiction because the question is one of statewide importance, and because our resolution of that issue will serve to terminate a major part of this litigation.

On January 15, 1982, the real parties in interest (Van Marle) conveyed a residence owned by them to Bruce and Loretta Marshall by warranty deed. In connection with the sale, the Marshalls executed a promissory note in favor of the Van Marles and a deed of trust to secure payment of the note. Paragraph 15 of the deed of trust, a typewritten addition to a printed form, provides as follows:

> "In the event title to the property described herein is transferred or conveyed in any manner whatsoever, the entire principal balance plus accrued interest due on the note secured hereby shall immediately become due and payable in full."

On August 26, 1983, Bruce Marshall quit-claimed his interest in the property to Loretta Marshall. Shortly thereafter, payments on the promissory note became delinquent, and the Van Marles noticed a trustee's sale of the property. The delinquency was cured and the sale cancelled sometime in November 1983.

On December 14, 1983, Mrs. Marshall conveyed the property to Steven and Margaret Phillips (petitioners) by warranty deed. In conjunction with the execution of this deed, petitioners qualified for and assumed a first deed of trust originally executed by the Van Marles in favor of Home Federal Savings and Loan. They did not assume the Marshall-Van Marle promissory note and deed of trust, but rather executed a promissory note to Mrs. Marshall in the amount of the remaining balance of the former note, secured by a "wrap around" deed of trust which provided that the payments on the Phillips-Marshall note would be applied in satisfaction of payments due on the Marshall-Van Marle note. It appears to be undisputed that since the cancellation of the trustee's sale, all payments to the Van Marles have been timely made, either by Mrs. Marshall or by petitioners.

On January 23, 1984, the Van Marles filed a three-count complaint in superior court against the Marshalls and petitioners. Count I sought to accelerate payment of the Marshall-Van Marle note on the grounds that Paragraph 15 of the deed of trust had been breached by Bruce Marshall's quitclaim of his interest to Mrs. Marshall, and that the Van Marles deemed themselves to be insecure and their security to be diminished as evidenced by the default in payments by Mrs. Marshall. Count II sought acceleration on the basis of the transfer of the property to petitioners in violation of Paragraph 15. Count III alleged that petitioners and the Marshalls refused to renegotiate the Marshall-Van Marle deed of trust in conjunction with their transaction, and that this amounted to a fraud upon the Van Marles.

Petitioners' motion for summary judgment, supported by the affidavit of Margaret Phillips, was based on the contention that under Arizona law a due-on-sale clause is a restraint on alienation and may be invoked only on reasonable grounds—generally, the impairment of the lender's security. The applicability of Arizona law in this regard was not preempted by federal law (the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3) because the Marshall-Van Marle promissory note was a "window period" real property loan which remained subject to state law restrictions on enforcement until 1985. Finally, petitioners argued that the undisputed evidence showed that the Van Marles had no reasonable grounds for invoking the due-on-sale clause, and that their complaint should therefore be dismissed.

■ Although the Van Marles' response briefly stated that the acts of the defendants caused "a significant diminution of the quality of [their] security," the main thrust of their argument was directed toward the enforceability of the due-on-sale clause in light of the enactment of 12 U.S.C. § 1701j-3 and relevant Arizona law. The federal statute was adopted by Congress in response to the Supreme Court's decision in *Fidelity Federal Savings and Loan Association v. De la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), holding that federal regulations permitting federally chartered savings and loan associations to exercise due-on-sale clauses in mortgages bars the application of contrary state law. While the statute provides for general federal preemption of state law restricting the enforcement of such clauses, it also creates a "window period" exception for loans made or assumed after the effective date of a state law or judicial decision restricting enforcement. The exception clause provides:

"(1) In the case of a contract involving a real property loan which was made or assumed, including a transfer of the liened property subject to the real property loan, during the period beginning on the date a State adopted a constitutional provision or statute prohibiting the exercise of due-on-sale clauses, or the date on

which the highest court of such State has rendered a decision (or if the highest court has not so decided, the date on which the next highest appellate court has rendered a decision resulting in a final judgment if such decision applies State-wide) prohibiting such exercise, and ending on October 15, 1982, the provisions of subsection (b) of this section [preempting state law and permitting enforcement] shall apply only in the case of a transfer which occurs on or after the expiration of 3 years after October 15, 1982, except that—

> (A) a State, by a State law enacted by the State legislature prior to the close of such 3-year period, with respect to real property loans originated in the State by lenders other than national banks, Federal savings and loan associations, Federal savings banks, and Federal credit unions, may otherwise regulate such contracts, in which case subsection (b) of this section shall apply only if such State law so provides...." 12 U.S.C. § 1701j–3(c)

In *Scappaticci v. Southwest Savings and Loan Association*, 135 Ariz. 456, 662 P.2d 131 (1983), our Supreme Court held that, for purposes of applying the exception to federal preemption created by 12 U.S.C. § 1701j–3(c), the "window period" in Arizona commenced on July 8, 1971, the date of the court of appeals' decision in *Baltimore Life Insurance Company v. Harn*, 15 Ariz.App. 78, 486 P.2d 190 (1971). In *Harn*, the court held that a provision in a note and mortgage which permitted the mortgagee to accelerate payment upon the transfer of title to the property was a restraint on alienation which would constitute a reasonable restraint only when invoked on reasonable grounds. Specifically, the court stated that "[a]bsent an allegation that the purpose of the clause is in some respect being circumvented or that the mortgagee's security is jeopardized, a plaintiff cannot be entitled to equitable relief." 15 Ariz.App. at 81, 486 P.2d 190.

Subsequent to the *Harn* decision, the legislature adopted the Deeds of Trust Act,

A.R.S. §§ 33–801 et seq., which included the following provision:

> "A. Nothing in this article shall be construed to prevent or limit the right of a trustor to transfer his interest in the trust property, or authorize a beneficiary or trustee to arbitrarily withhold his consent to a transfer by the trustor of his interest in the trust property.
>
> B. When a trustor transfers his interest in the trust property, no beneficiary or trustee shall charge a fee on the transfer of more than one hundred dollars or one per cent of the balance due on the obligation secured by the trust deed, whichever is greater.
>
> C. When a trustor transfers his interest in the trust property, no beneficiary or trustee shall increase the interest rate on the obligation secured by such trust deed unless the transferring trustor is released from all liability thereon and in no event shall the amount of such increase exceed one-half of one percent per annum more than the interest rate paid by the transferring trustor.
>
> D. This section shall be applicable only to trust property of two and one-half acres or less which is not used for commercial purposes and which is limited to and utilized for dwelling units, not to exceed four single-family units." A.R.S. § 33–806.01.

The enforceability of a due-on-sale clause in a deed of trust subject to this statute was considered by our supreme court in *Patton v. First Federal Savings and Loan Association of Phoenix*, 118 Ariz. 473, 578 P.2d 152 (1978). In that case, the plaintiff homeowner, whose house was subject to a deed of trust in favor of the defendant savings and loan association, attempted to sell the house to a third party and was informed by the defendant that it would invoke the acceleration clause unless it received a transfer fee of $181.33 and a ½% increase in the interest rate on the loan. The plaintiff had not asked to be released from liability on the note and deed of trust. See A.R.S. § 33–806.01(C). The court held that, in the absence of any showing that

the defendant's security was jeopardized, the enforcement of the clause was an unlawful restraint on alienation. Although both *Harn* and § 33–806.01 were relied upon by the supreme court, it is the nature of that reliance and the impact of the decision on deeds of trust not subject to § 33–806.01 that is at issue here and will be discussed below.

In response to the invitation of 12 U.S.C. § 1701j–3(c), quoted above, the Arizona legislature enacted A.R.S. § 33–1571 in 1983. This section provides:

"Notwithstanding any provisions of title 6 to the contrary, as provided by the Thrift Institutions Restructuring Act, P.L. 97–320, section 341, subsection (c)(1)(A) [12 U.S.C. § 1701j–3(c)(1)(A) ] the real property loans defined and described therein are regulated as follows:

1. From and after October 14, 1987, and not before, P.L. 97–320, section 341, subsection (b) applies to real property loans that were made or assumed, including transfers of liened property subject to real property loans, between July 8, 1971, and October 15, 1982, and that are secured by one to four family units utilized for residential purposes of two and one-half acres or less. Prior to October 15, 1987, upon a transfer of interest in such property, the interest rate on such loans shall not be increased by more than one-half of one per cent, and all other limitations provided in § 33–806.01 shall apply.

2. P.L. 97–320, section 341 [12 U.S.C. § 1701j–3], *applies in accordance with its terms* to all real property loans other than those described in paragraph 1 of this section." (Emphasis supplied)

The bill adopted by the legislature, Laws 1983, Ch. 321, § 5, contained an additional paragraph 3, not codified, which provided as follows:

"3. Until October 15, 1987, the enforceability of a due on sale clause in the real property loans described in § 33–1571, paragraph 1, Arizona Revised Statutes, *is subject to existing statutory and judicial restrictions,* including

those declared by the Arizona supreme court in the case of *Scappaticci v. Southwest Savings and Loan Association,* [135 Ariz. 456, 662 P.2d 131] No. 16266, rendered March 10, 1983." (Emphasis added)

The Van Marles contend that the effect of the enactment of § 33–1571 was to limit the restriction on enforcement of due-on-sale clauses to residential properties under two and one-half acres in size, and that the preemption of state law provided for in 12 U.S.C. § 1701j–3(b) is thereby made effective immediately as to all other real property loans. This is clearly not the effect or the intent of § 33–1571. Pursuant to paragraph 1, the legislature has acted as permitted by 12 U.S.C. § 1701j–3(c)(1)(A) to expand the period during which state restrictions remain in effect from three years to five years as pertains to residential properties involving less than two and one-half acres of land. Paragraph 2 of that section simply provides that all other real property loans will be governed by the federal statute, which expressly provides that state restrictions will continue in effect on window period loans until October 15, 1985 unless state law provides otherwise. In other words, the state is authorized to expand or contract the three-year exemption period created by subsection (c), but unless it does so expressly by statute, the three-year exemption will remain in effect.

The clear import of A.R.S. § 33–1571 is to expand the exemption period to five years in the case of loans pertaining to residences located on less two and one-half acres of land, but to leave the three-year exemption created by subsection (c) of the federal statute in effect as to all other real property loans.

There is no question that the loan in this case is not covered by the exemption created by A.R.S. § 33–1571(1). It is equally clear, however, that it is a window period loan and therefore subject to state law restrictions on enforcement of the due-on-sale clause until October 15, 1985. The issue then is whether state law prohibits the enforcement of a due-on-sale clause

contained in a deed of trust executed in conjunction with the sale of a residence located on more than two and one-half acres of land.

■ In this regard, the Van Marles' arguments in their memorandum in opposition to the special action are brief to the point of obscurity. They contend, without explanation, that A.R.S. § 33–806.01 and the supreme court's decision in *Scappaticci v. Southwest Savings and Loan Association*, supra, restrict the enforcement of due-on-sale clauses only in the case of loans pertaining to residences on less than two and one-half acres of land. We disagree.

*Scappaticci* was a class action brought against two state-chartered savings and loan associations seeking to enjoin the latter from implementing a policy of enforcing due-on-sale clauses in deeds of trust and mortgages of which they were the beneficiary or mortgagee. The members of the class were homeowners within the state whose homes were subject to a mortgage or deed of trust of which the defendants were the mortgagee or beneficiary and which contained such a clause. Noting the preemptive effect of 12 U.S.C. § 1701j–3, the court found the issue before it to be whether Arizona was a window period state and, if so, what statute or judicial decision marked the commencement of the window period. The court then reviewed the decisions in *Harn* and *Patton*, as well as A.R.S. § 33–806.01, and concluded that the window period commenced with the date of the decision in *Harn*. In so doing, even though *Harn* involved only a mortgage and not a deed of trust, the supreme court implicitly deemed that decision as establishing the restriction for state law purposes for both types of instruments. Indeed, the court reiterated the language in the *Patton* decision that " '[m]ortgages and Deeds of trust are significantly analogous that we may look to mortgage law for guidance in this case.' " 135 Ariz. at 459, 662 P.2d 131, quoting 118 Ariz. at 477, 578 P.2d 152. Further, the court specifically refused to follow the suggestion that *Patton* be utilized as the commencement of the

window period, concluding that "*Patton* followed the prevailing law as set out in *Harn* and the deed of trust statute." 135 Ariz. at 460–461, 662 P.2d 131.

Nor do we think that the limitation on the applicability of § 33–806.01 to residential property involving less than two and one-half acres of land implies a legislative intent that due-on-sale clauses in other types of deeds of trust be subject to no restrictions on enforcement. Subsection (A) merely codifies the decision in *Harn* and applies it expressly to one type of deed of trust, while subsections (B) and (C) establish specific conditions which may be attached to the transfer of such trust property without being deemed to be unlawful restraints. At the time this statute was enacted, the legislature presumably was aware of the decision in *Harn*, which applied to all types of mortgages, and we can conceive of· no reason why the legislature would have chosen to give effect to *Harn* in the case of one type of trust deed but not another. As noted by the supreme court in *Patton*, because the procedures authorized by the deeds of trust statutes make it far easier for a lender to forfeit the borrower's interest and also abrogate the right of redemption following a sale, the statutes must be strictly construed in favor of the borrower. 118 Ariz. at 477, 578 P.2d 152. Although the trust property in *Patton* was subject to § 33–806.01, nothing in the decision suggests that *Harn* would not apply to deeds of trust not subject to the statute. Nor does *Scappaticci* even suggest a different conclusion. Nowhere does it appear that the plaintiff class in that case was limited to homeowners whose residences were located on less than two and one-half acres of land, nor was this a factor in the court's decision.

■ In sum, we hold that the rationale of *Harn* applies to deeds of trust not subject to A.R.S. § 33–806.01, and that pursuant to 12 U.S.C. § 1701j–3 and A.R.S. § 33–1571 the Van Marles were prohibited from enforcing the due-on-sale clause contained in the January 15, 1982, deed of trust absent a showing that their security

was jeopardized as a result of the transfer of the trust property. In this connection we note that petitioners' motion for summary judgment was accompanied by the affidavit of Margaret Phillips which avowed that petitioners "have maintained and insured the subject real property in accordance with the terms of the Deeds of Trust thereon, and we have made all payments on the Promissory Note due Defendant Loretta C. Marshall in a timely manner, which payments have been accepted by Plaintiffs." No controverting affidavit was filed by the Van Marles, nor is there any evidence to support their claim of insecurity. Petitioners were therefore entitled to summary judgment as a matter of law. See *Northern Contracting Co. v. Allis-Chalmers Corp.*, 117 Ariz. 374, 573 P.2d 65 (1977).

█ Petitioners requested attorney's fees in the trial court and have renewed that request on appeal, as well as requesting attorney's fees in conjunction with this special action. Inasmuch as this is a matter arising out of contract, pursuant to A.R.S. § 12–341.01 attorney's fees are authorized and appropriate. Petitioners are directed to submit an affidavit in compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S., and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983) together with their statement of costs.

The order of the respondent trial court denying petitioners' motion for summary judgment is vacated, and the trial court is directed to enter its order granting the petitioners' motion.

BIRDSALL, C.J., and HATHAWAY, J., concur.