730 P.2d 197

**William J. SNOW and Eleanor J. Snow, aka Kelly Snow, husband and wife, Plaintiffs-Appellants,**

**v.**

**WESTERN SAVINGS & LOAN ASSOCIATION; John Does 1–20, Defendants-Appellees.**

**No. 1 CA–CIV 7971.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 26, 1985.

Westover, Choules, Shadle, Bowen & Clark, P.C. by Ted B. Bowen, Yuma, for plaintiffs-appellants.

Streich, Lang, Weeks & Cardon by Peter W. Sorenson, Louis A. Stahl, Deana S. Peck, Phoenix, for defendants-appellees.

EUBANK, Judge.

This is an appeal from a judgment in favor of Western Savings & Loan Association ("Western Savings") on William J. and Eleanor J. Snow's ("Snows") complaint for declaratory relief and damages. The case arose from the Western Savings' assertion of certain claimed rights under a due-on-sale clause in two separate transactions concerning the mortgaged real property. The Snows urge the following issues for our consideration: (1) whether the trial court erred in denying their motion for partial summary judgment as to Western Savings' liability; (2) whether as a matter of law the 1977 assumption agreement under which the Snows agreed to pay Western Savings' increased rate of interest upon their assumption of the mortgage lacked consideration; and (3) whether the trial court erred in refusing to declare that the conditions under which Western Savings stated it would consent to appellants' proposed sale of the mortgaged property to third persons in 1982 breached the mortgage and were invalid as an improper restraint on alienation.

The facts material to resolution of this appeal are not in dispute. On February 19, 1973, the Snows' predecessors in interest, George R. Leonard and Gene E. Rice, executed in favor of Western Savings a mortgage on a thirteen-unit apartment house to secure a loan in the amount of $107,000.00. Paragraph 18 of the mortgage provided in pertinent part:

> Mortgagor agrees that they will not, nor will they attempt to encumber, sell, transfer, assign, convey, lease, or in any other manner dispose of the property herein mortgaged or any part thereof ... without the prior written consent of Mortgagee. Upon default by the Mortgagor in the performance of any one or more of the terms, conditions, agreements, stipulations or covenants contained herein, the entire indebtedness secured hereby shall, at the option of Mortgagee, become immediately due and payable without notice or demand.

The contract interest rate on the promissory note secured by the mortgage was 8% per annum.

In early 1977 Leonard and Rice agreed to sell the mortgaged property to the Snows. As part of the transaction, on March 25, 1977 Leonard and Rice and the Snows executed a modification agreement and an assumption agreement on forms provided by Western Savings. The assumption agreement provided that the Snows would assume and agree to pay the $100,733.01 principal balance on the note at the rate of 9.25%. The modification agreement recited that the interest rate on the note was 8.0%, and expressly modified the note "by changing the interest rate as of the Effective Date to 9.25% per annum; ..." The Snows thereafter operated the apartment building and made regular monthly installment payments to Western Savings pursuant to the note and mortgage as modified. Until the instant controversy arose, the Snows did not object to paying the increased interest at the rate of 9.25%.

In early 1982 the Snows contracted to sell the apartment building to William R. Jewett and William E. Flavin. In April of that year the Snows solicited Western Savings' consent to the transaction. In a letter of April 19, 1982 to the escrow officer

in charge of the transaction, a loan officer for Western Savings advised in part as follows:

Pursuant to the terms and conditions of the promissory note and realty mortgage, any transfer (whether structured as a wraparound, a subject to sale, contract for sale, or otherwise) of the secured property must be approved by Western Savings. Western Savings will approve such a transfer upon the following terms and conditions:

1. Approval and qualification of Buyer/Buyers by Western Savings. A financial qualification package has been forwarded for each of the proposed Buyers.

2. An interest rate increase on the loan from 9.25% per annum to 12.25% per annum. This quote is good for a thirty (30) day period only.

3. Modification of the note to come due five (5) years after close of escrow.

4. Payment of a transfer fee in the amount of 1% of the unpaid loan balance.

5. Assumption by Buyer of all covenants and liabilities of Seller under the promissory note and mortgage.

6. Execution of an assumption agreement, modification agreement, letter of understanding and notice of modification, all of which will be prepared by this office.

7. Western Savings' title insurer must issue its written modification endorsement ensuring that Western Savings mortgage, as modified, remains a valid first and prior lien against the subject property.

8. Receipt of a copy of the purchase contract and escrow instructions relative to this transfer.

In the event the property is transferred without Western Savings' consent or the foregoing conditions are not met, Western Savings will bring legal action in court to protect its rights. Western Savings does not wish to and will not attempt in any way to prevent or interfere with the proposed sale, but we do reserve all our rights and remedies incident to transfer of the property (including our right to accelerate the loan and call it due, collect back interest and attorneys' fees, etc.). In this way, the needs and desires of all parties will be preserved and protected. If Western Savings is successful in litigation, the loan will have to paid off in full, or at Western Savings' option, the foregoing terms will have to be met and the back interest from the sale date as well as all costs and attorneys' fees of the litigation, will have to be paid.

For the purposes of this appeal both parties agree that that communication caused Jewett and Flavin to forego the proposed purchase.

On August 5, 1982 the Snows commenced this action against Western Savings seeking a declaration that their agreement to pay 9.25% interest on the loan they assumed in 1977 was unsupported by consideration and that Western Savings could only disapprove a transfer of the mortgaged property on grounds unrelated to the interest rate or the remaining term of the underlying loan. The Snows also sought damages for overpayment of interest charges and for the loss of the sale to Jewett and Flavin. After Western Savings had answered and discovery had commenced, the Snows moved for partial summary judgment on liability. Western Savings filed a cross-motion for summary judgment. The trial court granted summary judgment for Western Savings. As finally entered, the judgment additionally awarded Western Savings its costs and $10,037.70 for attorney's fees. This appeal followed.

A brief review of Arizona decisions applicable to the enforcement of due-on-sale clauses is necessary for a clear understanding of the issues. This court rendered Arizona's first due-on-sale decision in *Baltimore Life Insurance Co. v. Harn*, 15 Ariz.App. 78, 486 P.2d 190 (1971). In *Harn* the note and mortgage contained provisions allowing the debt to be accelerated and the mortgage foreclosed, at the mortgagee's option, upon any conveyance or transfer of title to the mortgaged property. The mort-

gagors conveyed the property, and the mortgagee sued to foreclose the mortgage. The trial court dismissed the complaint for failure to state a claim upon which relief could be granted, and this court affirmed. We noted that an acceleration clause is a bargained-for element of a mortgage that protects the mortgagee from unanticipated risks. We stated:

We believe that so long as an acceleration clause does not purport to restrict absolutely the mortgagors' ability to dispose of their property there is not the type of restraint on alienation that would render the clause void. It follows that the invocation of the clause must be based on grounds that are reasonable on their face.

An action to accelerate and foreclose a mortgage being an equitable proceeding, *Arizona Coffee Shops v. Phoenix Downtown Parking Ass'n*, 95 Ariz. 98, 387 P.2d 801 (1963), it is not enough to allege merely that the acceleration clause has been violated. *Absent an allegation that the purpose of the clause is in some respect being circumvented or that the mortgagee's security is jeopardized, a plaintiff cannot be entitled to equitable relief.* Otherwise the equitable powers of the trial court would be invoked to impose an extreme penalty on a mortgagor with no showing that he has violated the substance of the agreement, that is, that he would not make a conveyance that would impair the security. (Emphasis added.)

15 Ariz.App. at 81, 486 P.2d at 193. Although the Snows assert that *Harn* "involved a multi-unit condominium loan," the *Harn* opinion itself does not make clear whether the mortgaged property was residential or commercial, and the rationale of *Harn* rests on no such distinction.

Our supreme court considered due-on-sale clauses in *Patton v. First Federal Savings & Loan Association*, 118 Ariz. 473, 578 P.2d 152 (1978). *Patton* concerned a deed of trust on a residence. The trustor, Patton, sold the residence to a third person under a wraparound financing arrangement under which Patton remained liable on the debt secured by the deed of trust. Shortly thereafter, the beneficiary, First Federal, informed Patton that unless she paid First Federal a transfer fee and increased the interest rate on the loan by one-half of one percent, First Federal would accelerate the balance under a due-on-sale clause. Patton declined to do so, and First Federal initiated a trustee's sale. On appeal the court held that the granting of summary judgment for First Federal was error. The court stated:

The facts before us are very similar to the facts in *Tucker v. Lassen Savings & Loan Association*, 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974). The effect of the "due on sale" clause in this case and in *Tucker* are exactly the same; both clauses make it very difficult for a person to convey property subject to a Deed of Trust regardless of whether the contemplated transfer lessens the lender's security. Therefore, we follow the reasoning of the *Tucker* court and hold that the "due on sale" clause cannot be enforced unless First Federal can show that its security is jeopardized by the transfer of the subject property without First Federal's consent; enforcement of the clause without such showing is an unlawful restraint on alienation, prohibited by A.R.S. § 33–806.01(A)....

118 Ariz. at 478–79, 578 P.2d at 157–58. The *Patton* court also said concerning *Harn:*

Mortgages and Deeds of Trust are sufficiently analogous that we may look to mortgage law for guidance in this case. "Due on sale" clauses in mortgages are a means of protecting against a conveyance of the mortgaged property which would impair the mortgagee's security. [Citing *Harn.*] In *Harn, supra,* the court held that a "due on sale" clause in a mortgage would not be enforced unless the mortgagee alleged that his security was jeopardized by conveyance of the property to someone other than the original mortgagor.

118 Ariz. at 477, 578 P.2d at 156. Although the *Patton* court relied to some

extent on A.R.S. § 33–806.01, which specifically concerns residential deeds of trust, that section clearly was not the *sine qua non* of its holding. Further, the reasoning of *Patton* did not depend on the fact that the security device in that case was a deed of trust rather than a mortgage, or that the property in question was residential.[1]

Our supreme court dealt with due-on-sale clauses most recently in *Scappaticci v. Southwest Savings and Loan Association,* 135 Ariz. 456, 662 P.2d 131 (1983). That case arose from a class action brought by deed of trust borrowers seeking an injunction against enforcing due-on-sale clauses without regard to the financial responsibility of the purchaser unless an interest rate increase was agreed to or paid. The trial court entered partial summary judgment granting the requested injunction. On appeal, the appellant lenders urged the court to reconsider its prior holdings "in light of the danger to the financial integrity of the savings and loan associations should they not be allowed to enforce due on sale clauses." 135 Ariz. at 457, 662 P.2d at 132. The court stated:

> Although both parties and *amicus curiae* have thoroughly briefed the issue, a recent act of Congress obviates the necessity to decide whether the savings and loan associations' enforcement policy is in fact a restraint upon alienation. This act, the Garn-St. Germain Depository Institutions Act of 1982 (hereinafter "Garn Act"), preempts state restrictions on the enforcement of due-on-sale clauses. (Footnote omitted).

135 Ariz. at 457–58, 662 P.2d at 132–33. The court noted that the Garn Act provided a "window" exception to the general rule of preemption beginning in each state with that state's first adoption of a statutory or judicial restriction on the enforcement of due-on-sale clauses and ending on October 15, 1982. The court held that Arizona's window began on July 8, 1971, when the *Harn* decision was issued. The court therefore modified the injunction to apply only to loans made, assumed or transferred during the window period, and stated it would remain in effect until October 15, 1985, unless the Arizona Legislature acted as permitted in the Garn Act. In explaining its decision to select the *Harn* case as establishing the beginning of the Arizona window period, the court stated:

> [I]t is clear, as we recognized in *Patton,* that since 1971 in *Harn,* mortgage law in Arizona has placed restrictions on the enforcement of due on sale clauses. These restrictions are substantial enough to cause borrowers to believe they had assumable loans and sufficient, we believe, to qualify Arizona as a "window period" state, the beginning of which is triggered by *Harn.* (Footnote omitted).

135 Ariz. at 459–60, 662 P.2d at 134–35.

The most recent Arizona decision concerning due-on-sale clauses is *Phillips v. Superior Court,* 143 Ariz. 189, 692 P.2d 1038 (1984). There Division Two of this court held that under *Harn* a due on sale provision in a deed of trust on residential property larger than two and one-half acres[2] cannot be enforced absent a showing that the lender's security would be jeopardized by the transfer of the trust property.

---

1. *Tucker v. Lassen Savings & Loan Association, supra,* on which *Patton* relied, also concerned an installment sale under which the debtor remained liable on the promissory note secured by the deed of trust. *Tucker* placed significant reliance on the distinction between the "relative mild" restraint involved in the case of an outright sale as opposed to the restraint "imposed by the exercise of a 'due-on' clause upon the execution of an installment land contract." 526 P.2d 1169, 1175–76 n. 10. In its decision in *Wellenkamp v. Bank of America,* 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978), the California Supreme Court nevertheless held that automatic enforcement of a due-on-sale clause after an outright sale involving assumption of the debt constituted an unreasonable restraint on alienation. The court further extended that holding to commercial property in *Dawn Investment Co., Inc. v. Superior Court,* 30 Cal.3d 695, 180 Cal.Rptr. 332, 639 P.2d 974 (1982).

2. A.R.S. § 33–806.01 permits the imposition of transfer fees and a one-half of one percent interest rate increase on the transfer of residential property of two and one-half acres or less that is subject to a deed of trust.

We now turn to the Snows' contentions on appeal. The Snows first argue that their 1977 agreement to pay an increased interest rate of 9.25% upon their assumption of the note and deed of trust in this case was unsupported by consideration and should be rescinded. They reason in effect that under the law as established by *Harn* at that time, Western Savings had no right to enforce its due-on-sale clause absent any circumstances suggesting that its security would be impaired by the proposed transfer to the Snows. The Snows apparently conclude that absent any such circumstances, Western Savings had a legal duty to consent to the transfer, and there was therefore no consideration for the Snows' agreement to pay an increased rate of interest.

■ The Snows' conclusion is incorrect. It is certainly well established that the performance or promise to do something that a party is already legally obligated to do is not valid consideration for a contract. *Halstead Lumber Co. v. Hartford Accident & Indemnity Co.*, 38 Ariz. 228, 298 P. 925 (1931). It is equally well established, however, that forbearing to assert a legal claim can be valid consideration. *Gill v. Kreutzberg*, 24 Ariz.App. 207, 537 P.2d 44 (1975). *Restatement (Second) of Contracts* § 74 (1981) provides in pertinent part:

> Forbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration unless (a) the claim or defense is in fact doubtful because of uncertainty as to the facts or the law, or (b) the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid.

Based on the *Harn* opinion alone, Western Savings could reasonably have argued in 1977: (1) that the *Harn* opinion left room for enforcement of due-on-sale clauses on reasonable grounds other than protection of the lender's security; (2) that because *Harn* involved a recorded "agreement for sale," it should be held inapplicable in a transaction that contemplates the buyer's personal assumption and agreement to pay

the secured debt; and (3) that the Arizona Supreme Court should broadly construe *Harn* or reject it altogether, and hold that a lender's interest in maintaining its loan portfolio at current interest rates is sufficient justification for withholding consent to the transfer of the secured property. The implications of *Harn* for the 1977 transaction between the Snows and Western Savings was thus legally doubtful, and Western Savings' forbearance to litigate that question constituted consideration for the Snows' agreement to pay an increased rate of interest.

■ The Snows nevertheless appear to argue that Western Savings violated its duty of good faith by failing to disclose to them that it was increasing the interest rate at the time of the 1977 transaction. *See Restatement (Second) of Contracts* § 205 (1981). Their argument revolves largely around the following assertion:

> At the time that plaintiffs SNOW executed the Assumption Agreement (Exhibit 2), on March 25, 1977 that agreement does not even represent to plaintiffs that there has been an increase in the interest rate, and plaintiffs were not requested to sign the Modification Agreement (Exhibit 3) which does reflect that interest increase.

That, however, is incorrect. The Snows signed the modification agreement as well as the assumption agreement. The modification agreement specifically noted that the contract rate on the note was 8% per annum and expressly modified the note by changing the interest rate to 9.25% per annum. The Snows' apparent failure to make themselves aware of what they were signing provides no support for the view that Western Savings failed to act in good faith.

The Snows next argue that the trial court erred in granting summary judgment for Western Savings on their claim for declaratory relief and damages arising out of Western Savings' written demand for modifications in the note and mortgage in connection with the abortive sale to Jewett and Flavin in 1982. They argue that *Scap-*

*paticci* controls, and that under that case Western Savings clearly acted illegally in threatening enforcement of the due-on-sale clause to induce the Snows and their buyers to agree to onerous modifications of the note and mortgage.

As to the Snows' damages claim, we cannot agree that the trial court erred. In its 1982 letter to the escrow agent, Western Savings informed the parties of the conditions under which it would consent to the proposed sale, and noted that although it would not attempt to prevent a sale to which it had not consented, it would seek a judicial determination of whether it had the right to proceed to accelerate and foreclose. In our opinion, the state of the law in early 1982 was such that Western Savings could have argued in good faith that it should be entitled to exact its stated conditions under the circumstances of this case. *Scappaticci* had not yet been decided, and under *Harn* and *Patton* Western Savings could reasonably have argued that due-on-sale clauses in mortgages secured by commercial or investment property should be held enforceable. Western Savings could also reasonably have urged acceptance in Arizona of the view adopted by other jurisdictions that enforcing due-on-sale clauses constitutes a reasonable restraint on alienation in view of the asserted societal interest in favor of preserving the financial integrity of lending institutions by permitting them to maintain their loan portfolios at current interest rates. *See, e.g., Occidental Savings and Loan Association v. Venco Partnership,* 206 Neb. 469, 293 N.W.2d 843 (1980). *See also Hanigan v. Wheeler,* 19 Ariz.App. 49, 504 P.2d 972 (1972). Further, Western Savings could also reasonably have contended that federally chartered savings and loan associations were permitted by 12 C.F.R. § 545.8–3(f) (1980) to enforce due-on-sale clauses, and that under A.R.S. § 6–402(B), state chartered savings and loan associations were entitled to do likewise. The position asserted by Western Savings in its 1982 letter, though not based on the firmest possible legal ground, could nevertheless have been maintained in good faith and thus cannot be viewed as illegal or wrongful. Moreover, Western Savings' letter functioned primarily as a notification to the Snows and their prospective buyers that Western Savings would press its position in court should the occasion arise. The Snows have cited no authority, and we are aware of none, for the proposition that Western Savings could be held liable for damages under those circumstances.

To the extent the trial court granted summary judgment against Snow based on paragraphs numbered 2 (increased interest) and 3 (5 year payment on note) of Western Savings' April 19th letter, we hold that it erred in denying Snow declaratory relief. Our supreme court stated in *Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District,* 102 Ariz. 69, 424 P.2d 819 (1967):

A declaratory judgment is designed to afford security and relief against uncertainty with a view to avoiding litigation and to settle rights before there has been an irrevocable change of position by the parties. "Declaratory judgment acts have generally received a liberal construction from the courts." *Trossman v. Trossman,* [24 Ill.App.2d 521, 165 N.E.2d 368, 80 A.L.R.2d 933 (1960)], 24 Ill. App.2d at 524, 165 N.E.2d at 369.

\*    \*    \*    \*    \*    \*

Declaratory relief will be based on an existing state of facts, not those which may or may not arise in the future. 102 Ariz. at 73, 424 P.2d at 223. *See Planned Parenthood Center of Tucson, Inc. v. Marks,* 17 Ariz.App. 308, 497 P.2d 534 (1972); *Lake Havasu Resort v. Commercial Loan Insurance Corporation,* 139 Ariz. 369, 678 P.2d 950 (App.1983). In the instant case, the claims of the parties are based on existing facts. Moreover, although it might be argued that the controversy has become moot by the buyers' withdrawal from the proposed sale, the facts of this case suggest that the issue presented is capable of repetition, yet evades review. We therefore exercise our discretion to consider it. *Fraternal Order*

*of Police v. Phoenix Employee Relations Board,* 133 Ariz. 126, 650 P.2d 428 (1982).

■ *Scappaticci, Patton* and *Harn,* considered together, make it clear that Western Savings' stated conditions for its consent to the proposed sale to Jewett and Flavin gave rise to an unreasonable restraint on alienation. *Scappaticci* clearly holds that state chartered savings and loan associations may not enforce due-on-sale clauses in window period mortgages or deeds of trust unless they can show their security is jeopardized by a transfer of the liened property without their consent. Further, though *Scappaticci* involved residential property owners, the fundamental rationale of *Scappaticci* applies equally to commercial and investment property, and there is no reasonable ground under *Scappaticci, Patton* or *Harn* on which a different result could be predicated. *See also Phillips v. Superior Court, supra.* Accordingly, the trial court erred in failing to award relief in favor of the Snows declaring invalid Western Savings' conditions for its consent to the proposed 1982 sale.

Western Savings has requested an award of attorney's fees on appeal pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure, and A.R.S. § 12–341.01. In the exercise of our discretion, we deny the request.

The judgment is affirmed to the extent it grants Western Savings' motion for summary judgment on the Snows' claims for rescission of the 1977 modification agreement and for damages for loss of the 1982 sale. The judgment is reversed to the extent it granted Western Savings' motion for summary judgment on the Snows' claim for declaratory relief concerning the validity of Western Savings' conditions for its consent to the 1982 sale, and the case is remanded with directions to enter judgment for the Snows on that claim. Because of our disposition of the appeal, we also vacate the trial court's award of attorney's fees to Western Savings and remand for reconsideration thereof in light of the disposition announced herein.

CORCORAN, P.J., and FROEB, J., concur.